RAINS v RAINS

Docket No. 312243. Submitted May 7, 2013, at Detroit. Decided June 13, 2013, at 9:00 a.m.

Shannon M. Rains, who shared joint legal and physical custody of the child she had with her former husband, Jeffrey A. Rains, moved in the Oakland Circuit Court for a change of domicile so that she could relocate from Grand Blanc to Traverse City with her fiancé. Defendant responded by filing a motion requesting primary physical custody of the child. The court, Lisa Gorcyca, J., began its analysis by finding that the child had an established custodial environment with both parents, then placed the burden on plaintiff to establish by clear and convincing evidence that the factors set forth in MCL 722.31(4) favored a change in domicile. Having ruled that plaintiff had failed to meet this standard, the court reevaluated the factors set forth in MCL 722.23 that govern the best interests of the child and, on that basis, denied plaintiff's motion and modified the parties' parenting-time schedule. Plaintiff appealed.

The Court of Appeals *held*:

1. Plaintiff properly invoked appellate jurisdiction as of right under MCR 7.202(6)(a)(iii) because the order on the motion for a change of domicile had the potential to affect an established joint custodial environment.

2. The trial court erred by requiring plaintiff to establish that the factors set forth in MCL 722.31(4) favored a change in domicile by clear and convincing evidence rather than by a preponderance of the evidence. However, remand is not warranted because even if plaintiff had been able to establish these factors under the correct standard, the court would have denied the motion on the ground that plaintiff could not have proved by clear and convincing evidence that the move was in the child's best interests.

3. The trial court's finding that there was an established custodial relationship with both parents was supported by the evidence on the record.

4. The trial court's findings regarding best-interest factors b, c, e, j, and k were not against the great weight of the evidence.

5. The trial court's failure to explicitly state the change in circumstances that justified its review of the best-interest factors was not a clear legal error that warranted reversal because plaintiff's plan to commute more than 200 miles with the child was sufficient to justify a modification of the parenting-time schedule.

Affirmed.

1. Pᴀʀᴇɴᴛ ᴀɴᴅ Cʜɪʟᴅ — Cʜɪʟᴅ Cᴜꜱᴛᴏᴅʏ — Cʜᴀɴɢᴇꜱ ᴏꜰ Dᴏᴍɪᴄɪʟᴇ — Aᴘᴘᴇʟʟᴀᴛᴇ Jᴜʀɪꜱᴅɪᴄᴛɪᴏɴ.

   An order on a motion for a change of domicile is a final order that may be appealed as of right under MCR 7.202(6)(a)(iii) if it has the potential to affect an established custodial environment.

2. Pᴀʀᴇɴᴛ ᴀɴᴅ Cʜɪʟᴅ — Cʜɪʟᴅ Cᴜꜱᴛᴏᴅʏ — Cʜᴀɴɢᴇꜱ ᴏꜰ Dᴏᴍɪᴄɪʟᴇ.

   To determine whether a motion for a change of domicile should be granted, a court must determine (1) whether the moving party has established by a preponderance of the evidence that the factors set forth in MCL 722.31(4) support the motion; (2) if so, whether an established custodial environment exists; (3) if so, whether the change of domicile would modify or alter that established custodial environment; and (4) if so, whether the change in domicile would be in the child's best interests by considering whether the factors set forth in MCL 722.23 have been established by clear and convincing evidence.

*Haas & Associates, PLLC* (by *Trish Oleksa Haas*), and *The Ferrick Law Firm* (by *Connor Ferrick*) for plaintiff.

*Scott Bassett* for defendant.

Before: Bᴏʀʀᴇʟʟᴏ, P.J., and K. F. Kᴇʟʟʏ and Mᴜʀʀᴀʏ, JJ.

K. F. Kᴇʟʟʏ, J. Plaintiff, Shannon M. Rains, appeals as of right a trial court's order denying her motion for a change of domicile and modifying the parenting-time schedule between her and defendant, her former husband, Jeffrey A. Rains. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

The parties have an 11-year-old child. On May 12, 2010, the trial court entered a consent judgment of divorce, providing for joint legal and physical custody of the child. The judgment established a parenting-time schedule, which provided: (1) plaintiff and defendant alternated weekends, from Friday after school until Monday morning when the child was returned to school, or 5:00 p.m. if the child did not have school, (2) defendant had the child every Wednesday after school until the following morning when defendant returned him to school, or 5:00 p.m. if he did not have school, and (3) defendant had the child every other Tuesday after school following plaintiff's parenting-time weekend until Thursday morning when defendant returned the child to school, or 5:00 p.m. if he did not have school. The judgment also provided for even division of holidays and school breaks.

On April 25, 2012, plaintiff filed a motion for change of domicile to move the child from the metropolitan Detroit area to Traverse City, where her fiancé had recently accepted a job. Plaintiff proposed a modification to defendant's parenting time to every other weekend during the school year and every other week during the summer months. In response to plaintiff's motion, defendant moved for a change of custody, requesting that he be awarded primary physical custody of the child.

The Friend of the Court (FOC) recommended that plaintiff's request for a change of domicile be denied on the basis of the four factors enumerated in MCL 722.31(4). The FOC concluded that the proposed move did not have the capacity to improve the child's life given his close ties with his friends and community and the fact that he was unlikely to notice any change in the

family's financial situation. Despite the parties' strained relationship, the FOC did not believe that plaintiff's motivations were to frustrate defendant's parenting time; however, the FOC noted that a change in domicile would cause a significant change in the current parenting-time pattern. Given the financial comfort of both parties, the FOC found that there was no evidence that defendant's opposition to the change was motivated by a desire to maintain his reduced child support. Finally, the FOC found that neither party presented issues related to domestic violence.

At a five-day evidentiary hearing, Derk Pronger testified that he and plaintiff were to be married on September 21, 2012. Pronger had been an administrator at William Beaumont Hospital, where he earned approximately $150,000 a year. Pronger's new job in Traverse City provided career advancement and increased his salary to the mid $200,000s. Pronger believed his new position made him a leader in Traverse City, from which the family would benefit.

Marcia Ross, the parenting-time coordinator appointed by the trial court, testified that this was a difficult case given the high level of conflict between plaintiff and defendant, and that the child might find the move "somewhat unsettling" because the divorce had been hard on him. Further, Ross believed the move would prevent the parties from being involved with the child when he was with the other parent. While acknowledging that the fighting between plaintiff and defendant "bothers [the child] immensely," Ross thought that having plaintiff and defendant in close proximity to one another was important to him. Accordingly, Ross recommended that the status quo be maintained for the child's best interests. Ross indicated that plaintiff and defendant should continue to seek coun-

seling to resolve their issues, noting that both were defensive and that their behavior toward one another was "vile." However, Ross indicated that the child was "fabulous" and that plaintiff and defendant were "facilitating whatever needs to be facilitated," despite the intense fighting that went on when plaintiff and defendant had direct contact, including in the presence of the child.

Dr. Flack,[1] a licensed psychologist, testified that she had been treating the child since January 21, 2011, and both parents were involved in the child's treatment. Flack was aware that there were disagreements about the midweek exchanges, but believed that the difficulties between plaintiff and defendant went beyond this subject and that the midweek exchanges were not better or worse for the child.

Flack testified that the child knew about the potential move before defendant did and was reluctant about the prospect. However, Flack indicated that this reaction was typical for a child and that she believed the child was resilient enough to cope with the move. Flack also opined that defendant and the child could maintain a loving relationship despite the distance if plaintiff supported the relationship and defendant played an active role in the child's life. Flack testified that while neither party did "a wonderful job encouraging relationships in both directions," she opined that plaintiff put the child's interests first, and that defendant had significantly improved in doing so as well.

Plaintiff testified that she and Pronger had been dating for three years. She encouraged Pronger to apply for the position in Traverse City because she knew it was a "once in a lifetime" opportunity. Plaintiff believed

---

[1] Dr. Flack did not give her first name at the hearing.

that the child's life would be improved by the move because (1) he would be living in "a solid family structure" and would experience a healthy marriage, (2) Pronger and his family held prestigious positions in Traverse City, which the child would benefit from, (3) the child would live in a neighborhood with lots of children, (4) the Traverse City Catholic schools were superior to those in the metro Detroit area, (5) one of the child's friends would also be at the new school, and (6) the new distance would prevent midweek transfers, which were disruptive to the child because his belongings would sometimes get left behind. Plaintiff believed that the move would alleviate the stress of midweek transfers and prevent the child from being pulled into conflicts between plaintiff and defendant.

At the time of the evidentiary hearing, the sale of plaintiff's home was pending closing, and plaintiff planned to rent an apartment in the area and commute back and forth to the yet-to-be-purchased family home in Traverse City. Plaintiff told the court that she would not leave her son behind, but would stay and parent her son if the court determined that he could not move with her to Traverse City. Plaintiff testified that she could not make any decisions about her employment until the trial court made its decision regarding the motion for change of domicile, but explained that she would have the option of working or not working if the family moved to Traverse City. At the time of the hearing, plaintiff earned roughly $130,000 to $140,000 a year as a pharmaceutical sales representative.

Conversely, defendant testified that he opposed the move to Traverse City for several reasons: (1) the child was doing well in his current environment, (2) it would be detrimental to move the child away from his extensive extended family, friends, school, and father, (3) the

move would turn defendant into a "weekend dad" instead of a full-time dad, and (4) defendant had been the child's primary caregiver. Defendant did not believe the move would be best for the child, particularly given that the child already had issues that required him to see Flack. Defendant believed that alternating weeks would be better for the child because it would require less interaction between plaintiff and defendant and there would be less travel back and forth between plaintiff's home and defendant's home.

Defendant testified that after the divorce, he purchased a home in Grand Blanc because it was on the child's bus route; had sidewalks, lots of children, and community sporting facilities; and was approximately five miles from plaintiff's former home. Defendant owned his own business and had a home office, which allowed him to be flexible with his work schedule. He earned more than $80,000 a year and also managed a trust valued at more than $750,000.

Both plaintiff and defendant testified regarding specific problematic encounters that have occurred between them. The trial court judge noted that she was "well aware of the background of this case, and is well aware that mom thinks dad has issues, dad thinks mom has issues, [and] they both have issues with each other."

On August 21, 2012, the trial court issued an opinion and entered an order denying plaintiff's motion for change of domicile, and it also modified the parenting-time schedule to an alternating week format. Plaintiff now appeals as of right.

## II. APPELLATE JURISDICTION

Defendant argues that the appeal should be dismissed for lack of jurisdiction because the trial court's order denying plaintiff's motion for change of domicile

was not a final order appealable as of right. Defendant argues in his appellate brief:

> The only custody issue before the trial court was appellee's motion for change of custody. Appellant did not seek a change of custody. She sought only a change of domicile (although her requested relocation, if granted, would have disrupted the child's established custodial environment in the homes of both parents). Moreover, appellee's request for a custody change was contingent on the appellant's decision to relocate with the child to the Traverse City area away from the child's family, friends, and school. It was not the appellee's desire to disrupt the child's established custodial environment with both parties. When the trial court denied appellant's change of domicile motion, appellee's change of custody request became moot.

> The trial court, by keeping the established joint legal and joint physical custody arrangement intact, implicitly recognized that appellee's motion for change of custody was contingent on the outcome of the domicile issues. This view is further reinforced by the fact that the appellee did not appeal the trial court's decision to keep the existing custody arrangement intact. Therefore, there is no custody issue before this Court on appeal. As such, appellant's appeal should have been filed by leave, not by right.

"Whether this Court has jurisdiction to hear an appeal is an issue that we review de novo." *Wardell v Hincka*, 297 Mich App 127, 131; 822 NW2d 278 (2012). While we acknowledge defendant's well-stated argument that the trial court's decision denying a change of domicile effectively left the custody arrangement "as is," we nevertheless conclude that we have jurisdiction to hear this appeal as of right.[2]

---

[2] Even if we were to conclude that the denial of the motion for a change of domicile was not appealable as of right, we would nonetheless consider the merits of plaintiff's appeal as on leave granted "in the interest of judicial economy." See *Detroit v Michigan*, 262 Mich App 542, 545-546; 686 NW2d 514 (2004).

A final order includes "a postjudgment order *affecting the custody of a minor*[.]" MCR 7.202(6)(a)(iii) (emphasis added). This Court has previously defined the phrase "affecting the custody," at least in the context of a trial court's decision denying a motion for change of custody:

> Black's Law Dictionary defines "affect" as "[m]ost generally, to produce an effect on; to influence in some way." Black's Law Dictionary (9th ed), p. 65. In a custody dispute, one could argue, as plaintiff does, that if the trial court's order does not change custody, it does not produce an effect on custody and therefore is not appealable of right. However, one could also argue that when making determinations regarding the custody of a minor, a trial court's ruling necessarily has an effect on and influences where the child will live and, therefore, is one affecting the custody of a minor. Furthermore, the context in which the term is used supports the latter interpretation. MCR 7.202(6)(a)(iii) carves out as a final order among postjudgment orders in domestic relations actions those that affect the custody of a minor, not those that "change" the custody of a minor. As this Court's long history of treating orders denying motions to change custody as orders appealable by right demonstrates, a decision regarding the custody of a minor is of the utmost importance regardless of whether the decision changes the custody situation or keeps it as is. We interpret MCR 7.202(6)(a)(iii) as including orders wherein a motion to change custody has been denied. [*Wardell*, 297 Mich App at 132-133.]

Thus, we must ask whether the trial court's order denying plaintiff's motion for a change of domicile "influences where the child will live," regardless of whether the trial court's ultimate decision keeps the custody situation "as is."

There is little published caselaw regarding whether an order granting or denying a motion for a change of domicile constitutes an appeal of right. However, one

case illustrates that our Supreme Court favors treating such decisions as final orders. In *Thurston v Escamilla*, this Court dismissed for lack of jurisdiction an appeal from a trial court's order granting a change of domicile, concluding such an order was "a postjudgment order that does not affect the custody of a minor. . . . Domicile is not custody." *Thurston v Escamilla*, unpublished order of the Court of Appeals, entered September 10, 2003 (Docket No. 250568). We subsequently denied appellant's motion for reconsideration:

> The Court has reviewed the three unpublished cases cited by the appellant in support of the argument that there is an appeal of right from the order changing domicile. In [*Arthur v Arthur*, unpublished opinion of the Court of Appeals, issued April 17, 2001 (Docket No. 230437)], the opinion erroneously states that there was an appeal of right filed; the appeal was in fact by leave. In both *Telesz v Shearer*, [unpublished opinion of the Court of Appeals, issued August 16, 2002 (Docket No. 238907)] and *Visovatti v Visovatti*, [unpublished opinion of the Court of Appeals, issued February 23, 1999 (Docket No. 207010)], the orders in question both granted a change in domicile and denied the appellants' motions for change of custody. Clearly part of those orders affected the custody of a minor and were appealable by right. The order in this case did not involve a decision regarding any motion for change of custody and therefore *Shearer* [and] *Visovatti* do not apply. Furthermore, at the time the claims of appeal were filed in those two cases and the opinions issued there was no court rule prohibition against raising issues from the remainder of the order that did not affect custody of the minor. Therefore, the appellants were able to raise issues regarding domicile. But, effective September 1, 2002, MCR 7.203(A) was amended to limit the appeal to only that part of the order affecting custody. Parties are no longer permitted to use an order denying or granting custody to litigate by right a decision regarding domicile. [*Thurston v Escamilla*, unpublished order of the Court of Appeals, entered October 24, 2003 (Docket No. 250568).]

Our Supreme Court disagreed:

> In lieu of granting leave to appeal, the September 10, 2003, order of the Court of Appeals is vacated, and the case is remanded to the Court of Appeals for plenary consideration. MCR 7.302(G)(1). The divorce judgment awarded joint legal and physical custody to both parties, and there was, in fact, an established joint custodial environment under which defendant had nearly daily contact with the children. The August 12, 2003, order of the Saginaw Circuit Court granting plaintiff's motion for change of domicile does not mention a change of custody, but by permitting the children to be removed by plaintiff to the state of New York, the order is one *"affecting* the custody of a minor . . ." within the meaning of MCR [7.202(6)(a)(iii)] [emphasis supplied]. See also MCL 722.31. Therefore, the August 12, 2003, order is final, and appealable by right. MCR 7.203(A)(1). [*Thurston v Escamilla,* 469 Mich 1009 (2004).]

Here, the trial court denied plaintiff's motion for change of domicile and, without explicitly stating so, also denied defendant's motion for a change of custody. Defendant concedes that his motion for a change of custody was premised exclusively on plaintiff's success in changing domicile and, therefore, he does not take issue with the trial court's ruling. Under *Wardell,* a trial court need not change a custodial arrangement in order for its decision to affect custody. Plaintiff had hoped to move the child to Traverse City, where he would reside primarily with her and see defendant every other weekend. The trial court's decision not to allow such a move to take place necessarily influenced where the child would live. Therefore, the fact that the parties were left in status quo as a result of the trial court's order is not dispositive.

Further, as in *Thurston* and as further discussed below, the parties in this case enjoyed joint legal and physical custody of the child and there was an estab-

lished joint custodial environment with both parents. If a change in domicile will substantially reduce the time a parent spends with a child, it would potentially cause a change in the established custodial environment. *Gagnon v Glowacki*, 295 Mich App 557, 573; 815 NW2d 141 (2012); *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008). Therefore, we conclude that plaintiff has properly invoked appellate jurisdiction as of right. *Wardell* has provided an expansive definition of "affecting the custody of a minor." Additionally, in *Thurston* our Supreme Court indicated that an order on a motion for change of domicile that could affect an established joint custodial environment is appealable by right.

### III. CHANGE OF DOMICILE

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the "great weight of the evidence" standard. *Gagnon*, 295 Mich App at 565. " 'An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias.' " *Brown v Loveman*, 260 Mich App 576, 600-601; 680 NW2d 432 (2004), quoting *Phillips v Jordan*, 241 Mich App 17, 29; 614 NW2d 183 (2000). This Court "may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *McKimmy v Melling*, 291 Mich App 577, 581; 805 NW2d 615 (2011). However, "where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review

is not limited to clear error." *Id.* A trial court's findings regarding the existence of an established custodial environment are reviewed under the "great weight of the evidence" standard and must be affirmed unless the evidence clearly preponderates in the opposite direction. *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). This Court reviews questions of law de novo. *Brown*, 260 Mich App at 591.

### B. THE PROPER LEGAL FRAMEWORK

We take this opportunity to reiterate the correct process that a trial court must use when deciding a motion for change of domicile.

A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio*[3] factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.

---

[3] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

### 1. CONSIDERING WHETHER THE MOVING PARTY HAS ESTABLISHED THE FACTORS ENUMERATED IN MCL 722.31(4) BY A PREPONDERANCE OF THE EVIDENCE

MCL 722.31(1) prohibits "a parent of a child whose custody is governed by court order [from changing] a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." MCL 722.31(4) requires the trial court to consider several factors when a parent requests such a move, keeping the child as the primary focus:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

"The party requesting the change of domicile has the burden of establishing by *a preponderance of the evi-*

*dence* that the change is warranted." *McKimmy*, 291 Mich App at 582 (emphasis added).

### 2. DETERMINING WHETHER AN ESTABLISHED CUSTODIAL ENVIRONMENT EXISTS

It is only *after* the trial court determines that the moving party has shown by a preponderance of the evidence that a change of domicile is warranted that the trial court must determine whether an established custodial environment exists. *Gagnon*, 295 Mich App at 570; *Rittershaus v Rittershaus*, 273 Mich App 462, 463, 470; 730 NW2d 262 (2007).

Under Michigan law:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

This Court has described an established custodial environment as

> [an environment] of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger*, 277 Mich App at 706.]

A child may have an established custodial environment "with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Id.* at 707.

### 3. DETERMINING WHETHER A CHANGE OF DOMICILE WILL ALTER OR MODIFY THE ESTABLISHED CUSTODIAL ENVIRONMENT

After the trial court determines that the moving party has shown by a preponderance of the evidence that a change of domicile is warranted and if there is an established custodial environment, the trial court must determine whether the change in domicile would cause a change in the established custodial environment. *Gagnon*, 295 Mich App at 570; *Rittershaus*, 273 Mich App at 463, 470 n 2. "It is possible to have a change of domicile while having both parents retain joint physical custody without disturbing the established custodial environment." *Brown*, 260 Mich App at 596.

### 4. DETERMINING WHETHER A CHANGE OF DOMICILE IS IN THE CHILD'S BEST INTERESTS BY CLEAR AND CONVINCING EVIDENCE

If the trial court concludes that a change in an established custodial environment would occur, then the party requesting the change of domicile must prove by clear and convincing evidence that the change is in the child's best interests. *Gagnon*, 295 Mich App at 570; *Rittershaus*, 273 Mich App at 463, 470-472.

MCL 722.23 establishes the factors to be considered in determining a child's best interests:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

"These findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005) (citations omitted). "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger*, 277 Mich App at 705.

### C. APPLICATION OF THE LAW

#### 1. INCORRECT APPLICATION OF THE LEGAL FRAMEWORK

In its order, before evaluating the change-in-domicile factors under MCL 722.31(4), the trial court noted that

"[i]nitially, the Court must determine whether an established custodial environment exists." After concluding that the child had an established custodial environment with both parents, the trial court noted that "since the proposed change would modify the established custodial environment, the burden is on Plaintiff Mother, as the parent proposing the change, to establish by clear and convincing evidence that the change is in the child's best interest." The trial court concluded that plaintiff had failed to demonstrate by clear and convincing evidence that the change in domicile was justified under the factors set forth in MCL 722.31(4). The trial court engaged in a best-interest analysis in its discussion of defendant's motion for change of custody. The trial court determined, without noting what standard it was applying, that the factors favored defendant. For this reason, the trial court determined that given plaintiff's pending marriage and potential move to Traverse City, a new parenting schedule was required.

Although the trial court clearly undertook a painstaking review of the evidence and made a well-reasoned conclusion in this case, it operated under the wrong legal framework. The trial court should have first determined whether plaintiff could demonstrate by a preponderance of the evidence that the four factors favored a change of domicile. If so, the trial court could have proceeded on the question of whether the proposed change would change the child's established custodial environment. A potential change in the established custodial environment would have required plaintiff to prove by clear and convincing evidence that the change was in the child's best interests. By using the clear-and-convincing-evidence standard instead of the preponderance-of-the-evidence standard when considering the preliminary question of whether the factors set forth in MCL 722.31(4) allowed for a change of domicile, the trial court committed a legal error.

However, while a trial court's clear legal error would generally require remand for further consideration under the proper legal framework, see *Fletcher v Fletcher*, 447 Mich 871, 882; 526 NW2d 889 (1994), we see no reason to remand this case. Given the particular circumstances here, even if the trial court had used the proper standard and found by a preponderance of the evidence that the factors in MCL 722.31(4) favored a change of domicile, because a change of domicile would have altered the child's joint custodial environment, plaintiff would have had to prove by clear and convincing evidence that the change in domicile was in the child's best interests. *Rittershaus*, 273 Mich App at 463, 470. It is obvious from the trial court's detailed findings and conclusions that it would have denied the motion for a change of domicile because of plaintiff's inability to prove by clear and convincing evidence that the move was in the child's best interests. Accordingly, even if plaintiff could have demonstrated by a preponderance of the evidence that the change in domicile was warranted, plaintiff failed to demonstrate that she could have ultimately proven by clear and convincing evidence that the change in an established custodial environment was in the child's best interests. Therefore, the trial court's erroneous application of the clear-and-convincing-evidence standard to the change-in-domicile factors does not require reversal and, for purposes of this appeal, we will proceed with the assumption that plaintiff proved by a preponderance of the evidence that the factors laid out in MCL 722.31(4) favored a change in domicile.

### 2. ESTABLISHED CUSTODIAL ENVIRONMENT

The trial court found that "[b]oth parents provide [the child's] material needs and necessities of life, including medical care, clothing, uniforms and sporting

equipment" and "[b]oth parties pay various expenses for baseball, basketball, skiing, and Boy Scouts." The trial court noted defendant's testimony regarding defendant's participation at the child's school, in athletic activities, Boy Scout projects, and the child's musical interests. The trial court also noted that despite defendant's efforts on two occasions to take the child to see a doctor, plaintiff discouraged defendant from doing so and chose to take the child to a doctor that was farther away, where plaintiff's fiancé was employed. The trial court concluded (1) that the child "naturally looks to both parties" for guidance, discipline, necessities of life, and comfort and (2) the child's relationships with both plaintiff and defendant "are marked by qualities of security, stability, and permanence."

Despite plaintiff's arguments to the contrary, the trial court's finding that there was an established joint custodial relationship is supported by the record. The testimony of the child's teacher and a mother of one of the child's friends both indicated that defendant was actively involved in the child's academic and extracurricular activities. Further, the child's psychologist testified that the child had a close relationship with defendant and was "comfortable with both [parents]."

Additionally, defendant testified that the child tells defendant he loves him and that they hug, hold hands, pray together at night, and talk every day. Defendant went to most of the child's sports games and practices. He purchased his home because it was on the child's school's bus route and had sidewalks, lots of children, and community sporting facilities. Defendant also indicated that he intended to remain in his home indefinitely, despite his relationship with a woman who lives a distance away in Lansing. While defendant gave up parenting time, he explained that he surrendered mid-

week parenting on the basis of the parenting time coordinator's suggestion to try the week on/week off schedule in the summer to reduce conflict.

We reject plaintiff's claim that the established custodial environment was destroyed by the child's uncertainty about where he would be living in the future. Repeated changes in physical custody and the uncertainty resulting from an upcoming custody trial can destroy an established custodial environment. *Baker v Baker*, 411 Mich 567, 580-581; 309 NW2d 532 (1981); *Bowers v Bowers*, 198 Mich App 320, 326; 497 NW2d 602 (1993). However, in the present case, there have not been repeated changes in physical custody—both parents have shared joint physical custody of the child since the divorce judgment. The child has traveled back and forth from plaintiff's and defendant's homes to effectuate parenting time, but defendant's home is located a mere five miles from plaintiff's home, which was the marital home.

In the present case, the record supports the conclusion that the child's custodial environment was with both parents. Defendant was actively involved in the child's daily life, including weeknight overnights, attendance at sports games and practices, volunteering at the child's school, and speaking with him every night. The trial court did not err by finding that an established custodial environment existed with both parents.

### 3. BEST INTEREST FACTORS

In its discussion of the best-interest factors, the trial court credited defendant with factors (d), (e), and (i). The trial court credited plaintiff and defendant equally regarding factors (a), (b), (c), (f), (g), and (h), and credited neither plaintiff nor defendant regarding fac-

tors (j) and (k). Plaintiff only challenges the trial court's findings regarding factors (b), (c), (e), (j), and (k).

a. MCL 722.23(b)

Plaintiff argues that the great weight of the evidence does not support the trial court's finding that both plaintiff and defendant could equally provide the child with love, affection, and guidance and continue educating and raising him in his religion or creed.

The testimony revealed that both parents were actively involved at the school as well as in the child's extracurricular activities. Plaintiff testified that she was a practicing Catholic, and defendant testified that he was Catholic and had no intentions to change his religion, though he did occasionally attend, and had taken the child to, a nondenominational church for family rather than religious reasons. Defendant supported the child's being an altar server, but because of scheduling difficulties and frustrations, defendant did not want the child to participate in the activity on defendant's parenting-time days. Plaintiff testified that defendant paid for half of the child's tuition, which was discounted because of plaintiff's tithing at the church.

Despite plaintiff's contentions regarding a past dispute between the child and defendant, defendant's failure to pay registration fees for camp and school, and defendant's not being willing to assist with altar serving during his parenting time, the trial court's finding that both parties should be equally credited with this factor is not against the great weight of the evidence.

b. MCL 722.23(c)

Plaintiff argues that the great weight of the evidence does not support the trial court's finding that both

plaintiff and defendant were equally able to provide the child with food, clothing, medical care, and other material needs because defendant admitted that plaintiff handled all of the child's medical and dental needs and took care of the child when he was ill, and defendant admitted to failing to pay court-ordered child support, camp fees, and school fees.

Both plaintiff and defendant have sizable incomes, roughly $140,000 and $85,000, respectively. Both plaintiff and defendant testified regarding the necessities they provided for the child. Defendant admitted that he has not yet made child-support payments, but he explained that plaintiff's attorney had not yet filed the required paperwork and that he had put money in escrow to cover the payments.

Defendant also admitted that plaintiff took the child to most of his doctor and dentist appointments, but he explained that (1) the dentist was a friend of plaintiff's and he would take the child to another dentist if plaintiff would allow it, (2) the child's doctor was located an hour away from defendant's home at the facility where Pronger works, (3) plaintiff did not approve of the child's seeing the local doctor defendant would have taken him to, and (4) defendant generally went along with plaintiff's decisions regarding the child's medical and dental care because plaintiff generally did not agree with defendant's choices. Defendant also admitted that because plaintiff was a pharmaceutical representative, she knew more about medicine than he did. Defendant denied plaintiff's claims that defendant would essentially "dump" the child with her when the child got sick. Defendant admitted that he did not pay the child's school enrollment fee and camp fees because he was frustrated with plaintiff's ordering him around and not allowing him to participate in decision-making.

There is evidence on the record to support the trial court's findings. Also, this factor involves credibility determinations, and this Court defers to the trial court on such matters. *Berger*, 277 Mich App at 705. The trial court's finding that plaintiff and defendant should be equally credited with this factor was not against the great weight of the evidence.

### c. MCL 722.23(e)

Plaintiff argues that the great weight of the evidence does not support the trial court's finding that whether the family unit would stay intact favored defendant because plaintiff had not yet purchased a home in Traverse City. Further, she argues that the trial court did not evaluate the benefits the child would gain from having a two-parent household and, instead, focused on the home itself.

"This factor exclusively concerns whether the family unit will remain intact, not an evaluation about whether one custodial home would be more acceptable than the other." *Ireland v Smith*, 451 Mich 457, 462; 547 NW2d 686 (1996) (citations and quotation marks omitted). However, in this case, the trial court's findings make it clear that the trial court was concerned with the *permanence* of plaintiff's and defendant's homes, rather than the actual homes themselves. Plaintiff's contention that the trial court should have considered the benefits of a two-parent home is without merit because plaintiff and Pronger were not yet married at the time of the evidentiary hearing. While plaintiff and Pronger were planning to purchase a home, defendant intended to stay in his home indefinitely, a home that the child had already grown accustomed to. Plaintiff also had recently sold the marital home, and because the trial court denied the motion to change domicile,

plaintiff would essentially have had two custodial homes: a home in Traverse City and an apartment in Grand Blanc. Therefore, the trial court's finding in favor of defendant on this factor was not against the great weight of the evidence.

### d. MCL 722.23(j)

Plaintiff argues the great weight of the evidence does not support the trial court's finding that the factor of facilitating a relationship between the parents and the child favored neither party because Flack testified that plaintiff did well in not discouraging the child's relationship with defendant, while the record showed that defendant routinely berated plaintiff in front of the child, failed to use the court-ordered parent coordination services, and only infrequently attended the child's psychological counseling sessions.

The trial court found that "[plaintiff's] testimony, past actions, and demeanor reflects her desire to move [the child] away from [defendant,] thereby discouraging a close and continuing parent-child relationship." The trial court acknowledged that both plaintiff and defendant admitted their relationship was difficult, and it noted that the e-mail exchanges between the parties reflected a high level of conflict. The trial court found that, while defendant was equally at fault for the conflict, he had made significant improvement in his relationship with plaintiff, while plaintiff had not similarly improved.

Plaintiff testified that she found it impossible to coparent the child with defendant. Plaintiff believed she bore "a small responsibility" for the dysfunctional relationship with defendant, explaining that she tried to focus on the child in her communications with defendant while defendant took any opportunity he could to

insult her. Plaintiff stated that the fewer interactions she had with defendant, the fewer opportunities he would have to be verbally abusive to her. Plaintiff responded affirmatively when asked if she believed she was still being harassed by defendant. Conversely, defendant complimented and gave credit to plaintiff during his testimony. Defendant often accepted responsibility for past decisions and his past improper conduct involving plaintiff. The trial court was in a better position to determine plaintiff's demeanor, and this Court defers to the trial court regarding credibility determinations. *Berger*, 277 Mich App at 705.

Flack opined that defendant had "improved significantly in not discouraging the relationship between" plaintiff and the child. When Flack first met defendant, he was more apt to be demeaning or yell at people in the child's life, but he had not done so recently, at least in front of the child. Flack also testified, "I don't feel like either party does a wonderful job encouraging relationships in both directions. . . . I think that [plaintiff] does a good job at not discouraging the relationship, and I think she does a real good job at reminding him to have a good relationship with his father."

Plaintiff argues that defendant's failure to use court-ordered parenting services showed his disregard for his relationship with plaintiff. While defendant admitted that he was resistant to using Ross rather than someone less expensive, defendant ended up using her services. Defendant did not attend the child's counseling as frequently as plaintiff, but Flack testified that defendant did go when issues arose.

A review of the facts demonstrates that both plaintiff and defendant were responsible for the ongoing conflict between them. Therefore, there is evidence on the record to support the trial court's findings, and the trial

court's finding that neither party should be credited with this factor was not against the great weight of the evidence.

### e. MCL 722.23(k)

Plaintiff argues the great weight of the evidence does not support the trial court's finding that the factor of domestic violence favored neither party because the trial court erred by refusing to consider prejudgment evidence. Plaintiff alternatively contends that even if only postjudgment evidence were considered, there was sufficient evidence of domestic violence on defendant's part that this factor should have favored plaintiff.

The trial court noted that it was aware of several previous PPOs and that the court had set aside a PPO against defendant after reviewing a videotape of the incident that gave rise to it, finding that it had no basis. Whether the alleged incidents of domestic violence that plaintiff alleges occurred constitutes a credibility determination, and this Court defers to the trial court on such matters. *Berger*, 277 Mich App at 705. Therefore, the trial court's finding that the record did not support plaintiff's claims of domestic violence was not against the great weight of the evidence.

### IV. MODIFICATION OF PARENTING TIME

Plaintiff argues that the trial court erred when it revisited the best-interest factors because defendant did not prove that there was proper cause or change of circumstances to do so. Defendant counters that there was no change in custody, only a change in parenting time, which was necessitated by plaintiff's unilateral action of moving to the Traverse City area and renting an apartment in the Grand Blanc area because these

actions precluded plaintiff from being able to fulfill her midweek parenting-time requirements.

Modifications in parenting time are not necessarily changes in custody. See *Shade v Wright*, 291 Mich App 17, 25; 805 NW2d 1 (2010). Changes in parenting time are distinct from changes in custody, and only if a "change in parenting time results in a change in the established custodial environment" should the court apply the "proper cause and change of circumstances" framework to a proposed change in parenting time. *Id* at 27. "When a modification in parenting time would amount to a change of the established custodial environment, it should not be granted unless the circuit court 'is persuaded by clear and convincing evidence that the change would be in the best interest of the child.' " *Pierron v Pierron (Pierron I)*, 282 Mich App 222, 249; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010), quoting *Brown*, 260 Mich App at 595. "If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed." *Pierron v Pierron (Pierron II)*, 486 Mich 81, 86; 782 NW2d 480 (2010). When a parenting-time modification does not change the established custodial environment, "a more expansive definition of 'proper cause' or 'change in circumstances' is appropriate . . . ." *Shade*, 291 Mich App at 28. In order to modify a parenting-time schedule, if the modification would not constitute a change in an established custodial environment, the party proposing the change must show by a preponderance of the evidence that the change is in the child's best interests. *Id*. at 23.

While defendant filed a motion to change custody and requested primary physical custody of the child, the

trial court ordered the parents to continue sharing joint physical custody and ordered a new parenting-time schedule: alternating weeks and a midweek dinner with the child and the nonresidential parent. The previous parenting-time schedule essentially was: (1) every other weekend, from Friday afternoon to Monday morning, for plaintiff and defendant, (2) Wednesday overnights for defendant, (3) Tuesday overnights, every other Tuesday following plaintiff's parenting time weekends, for defendant, and (4) the remaining time with plaintiff. Under the previous parenting-time schedule, plaintiff and defendant divided or alternated holidays and school breaks and were each given two weeks of vacation parenting time. The trial court estimated that the previous parenting-time schedule provided plaintiff with approximately 209 overnights and defendant with approximately 156 overnights.

Under the new parenting-time schedule, plaintiff and defendant each have roughly 182 overnights. This reduces plaintiff's parenting time by 27 overnights, which gives plaintiff about 2.25 fewer overnights a month. This change was not likely to "change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort" and, therefore, does not rise to the level of a change in custody. *Pierron II*, 486 Mich at 86.

While plaintiff is correct that the trial court did not explicitly state a proper cause or change in circumstances to justify the change, the trial court's analysis of the best-interest factors demonstrates that the trial court based the decision to modify the parenting-time schedule on plaintiff's testimony that (1) she sold her home, (2) she was engaged to a man who was moving to Traverse City, and (3) if her motion to change domicile were denied, she would rent an apartment in Grand

Blanc and commute between Traverse City and Grand Blanc. Accordingly, the trial court's failure to explicitly state the change in circumstances justifying review of the best-interest factors was not a clear legal error.

Because of the more than 200-mile distance between Traverse City and Grand Blanc, plaintiff's new commuting lifestyle constituted proper cause or a change in circumstances that was sufficient to justify the trial court's modification of parenting time. *Shade*, 291 Mich App at 29-30. While plaintiff contends that because she testified that she would not move to Traverse City without her child, there was no proper cause or change in circumstances to revisit the custody order, plaintiff also testified that if the trial court denied her motion for a change in domicile, the child would commute with her to Traverse City for her parenting-time weekends and holidays. Both plaintiff and defendant testified at length regarding the difficulties that arose from the child's shifting back and forth between plaintiff's and defendant's homes so frequently. Given that the child would no longer be shifting between just two homes, but now three homes, this change constituted a sufficient proper cause or change in circumstances to justify the parenting-time modifications that reduced the number of transfers of the child. Accordingly, the trial court did not err because its modification of parenting time was justified by a change in circumstances.

Affirmed.

BORRELLO, P.J., and MURRAY, J., concurred with K. F. KELLY, J.