*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARON STOLL,

        Plaintiff-Appellant,

v

SCOTT PIETILA,

        Defendant-Appellee.

UNPUBLISHED
March 17, 2022

No. 358542
Houghton Circuit Court
Family Division
LC No. 14-015864-DM

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

In this child custody matter, plaintiff appeals as of right the lower court order denying her motion for a change of domicile. Plaintiff and defendant share joint custody of their three children. We vacate the order denying plaintiff's motion and remand this case for additional proceedings.

## I. BACKGROUND

Plaintiff, a physician, had resided in the Keweenaw Peninsula since 2010. Plaintiff has had difficulty maintaining steady employment. From 2010 until 2021, she experienced seven employment changes for various reasons. Her most recent employment in the Keweenaw Peninsula was with a tribal hospital, and began in January 2019. At the time of the hearing, plaintiff had a student loan balance of $144,000, but when she was employed at the tribal hospital, she enrolled in a repayment plan that would enable her to be debt-free within four years. However, in September 2020, plaintiff was terminated from her job with the tribal hospital. If unable to find qualifying employment in a rural area for the repayment program, plaintiff would have been liable for a penalty of approximately $60,000. From September 2020 until May 2021, plaintiff was unemployed. She testified that there were no employment opportunities left for her in the Keweenaw Peninsula. In May 2021, plaintiff accepted a position in Vermont that qualified for her loan repayment program, and she moved for a change of domicile in the trial court. At that time, plaintiff had primary physical custody of the children, and defendant had parenting time every other weekend and on Wednesday nights.

-1-

Defendant graduated college in 2008 with an education degree, but he ultimately decided he did not want to be a teacher. From 2008 until 2014, defendant did not have employment and instead was a stay-at-home parent. After the parties' divorce, defendant found employment as an electrician and has been steadily employed since 2015. Defendant opposed plaintiff's motion because he believed it was best for the children to remain in the Keweenaw with both parents in the area. After a two-day hearing, the trial court agreed with defendant and denied plaintiff's motion. This appeal followed.

## II. STANDARDS OF REVIEW

The trial court's decision on motion for a change of domicile is reviewed for abuse of discretion. *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013). "An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id*. (quotation marks and citations omitted). Findings of fact concerning the statutory factors are reviewed under the great weight of the evidence standard. *Id*. Under this standard, "[t]his Court may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." *Id*. at 324-325 (quotation marks, citations, and alteration omitted). "In the child custody context, questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014).

## III. DISCUSSION

Plaintiff argues that the trial court's findings regarding the *D'Onofrio*[1] factors were inconsistent with the statutory language. We agree.

MCL 722.31 provides in relevant part:

(1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

\* \* \*

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (1976).

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

It is undisputed that factors (d) and (e) are not applicable in this case. Plaintiff challenges the court's findings under factors (a), (b), and (c).

## A. CAPACITY TO IMPROVE QUALITY OF LIFE

The trial court erred by overemphasizing plaintiff's employment history and by failing to consider the financial benefits accompanying the relocation.

"It is well established that the relocating parent's increased earning potential may improve a child's quality of life . . . ." *Ritterhaus v Ritterhaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007). Moreover, "[t]his Court has recognized that the benefits of the school or school district where the moving party plans to relocate is a relevant consideration under MCL 722.31(4)." *Yachcik v Yachcik*, 319 Mich App 24, 41; 900 NW2d 113 (2017). Other considerations include the "proximity to immediate and extended family members," the ability to remain "in a stable environment," and "the importance of having a day-to-day relationship with a parent." *Id*. at 44.

The trial court described factor (a) as "by far the most significant factor" and described plaintiff's employment history as its "most significant concern." The trial court criticized plaintiff's frequent employment turnover and praised defendant's employment stability. The trial court stated that it "clearly believe[s] that [plaintiff's Vermont] job has the capacity to improve your life," but expressed skepticism about her ability to keep the job. The court described plaintiff's new location as "gorgeous," and acknowledged that there were likely excellent extracurricular opportunities for the children there. Nonetheless, the court found that factor (a) "weighs overwhelmingly, because of the stability factor, because of the uncertainty that has been

demonstrated, in the last eleven years, with maintaining—bouncing from job to job, regardless of whose fault again, once again, weighs heavily in favor of the father in this case."

In our view, the court gave undue weight to plaintiff's employment history. The statute requires the court to examine the quality of life of the party and children if the move was not allowed, to examine their quality of life if the move was allowed, and to then assess whether the move would result in an improved quality of life. MCL 722.31(4)(a). The trial court, however, instead focused almost exclusively on the parties' respective employment stability. The fact that plaintiff was unable to remain at a single place of employment for a prolonged period of time appeared to be the dispositive fact under not only this factor, but for the motion itself. Indeed, the court stated that factor (a) was "by far the most significant factor," and then stated that its "most significant concern" was plaintiff's "employment record from August of 2010 to August of 2021."

The trial court's analysis overlooked evidence that supported the assertion that the move had the capacity to improve the children's quality of life. Most importantly, the court wholly disregarded the substantial economic benefits to both plaintiff and the children that would have come with moving rather than staying in Michigan. If allowed to move to Vermont, plaintiff would continue working at a job that paid $156,000 a year and offered a full benefit package. Plaintiff was unemployed for eight months prior to accepting the job in Vermont. She testified that there were no opportunities to work as a physician without relocating, and if her motion was denied, she would be forced to seek "an entry level minimum wage job." Even the court acknowledged that it was not plaintiff's fault that she could not find work in Michigan and had to look elsewhere. Defendant, on the other hand, made $55,000 a year, and his job did not offer benefits. Therefore, if plaintiff could not relocate to Vermont, instead of being supported primarily by plaintiff's $156,000 salary, the children would be supported primarily by defendant's $55,000 salary, and defendant would need to obtain benefits on the market. The court acknowledged that, in this scenario, the children's quality of life could be impacted: "[M]aybe they wouldn't be able to go to Hawaii, and maybe some of the extracurriculars might have to be come—cutback, to some degree." The court also acknowledged that plaintiff's job in Vermont had "the capacity to improve [her] life," but expressed skepticism toward her ability to "maintain this employment." However, plaintiff testified that if she did for some reason lose her new job in Vermont, the area had "an endless supply of jobs that are in clinics," and that there was "no end to the employment opportunities" for her in this region. The court failed to acknowledge this testimony.

As it pertains to finances, the trial court additionally failed to discuss crucial evidence concerning plaintiff's student loan situation. At the time of the hearing, plaintiff had a student debt balance of $144,000; however, if she were allowed to relocate to Vermont and remain in her repayment program, she would be debt-free within four years. Plaintiff testified that, in this scenario, she would be able to help her children pay for their higher education. Alternatively, if plaintiff were to remain in Michigan, not only would she still be responsible for the $144,000 in student debt, she would also incur a substantial penalty. This would clearly have a spillover effect onto the children, in addition to the effect of the substantial income reduction that was discussed above. Despite the obvious magnitude of this situation, the discussion of plaintiff's loan repayment was completely omitted from the court's analysis of this factor.

For these reasons, we vacate the trial court's finding that this factor weighed against relocation.

## B. COMPLIANCE WITH AND UTILIZATION OF PARENTING TIME ORDER

The majority of the court's findings under this factor did not actually pertain to factor (b), and the court's ultimate finding that this factor weighed against relocation was not supported by the evidence.

It is undisputed that neither party was attempting to frustrate the other party's parenting time. MCL 722.31(4)(b). When making its findings under this factor, the court engaged in a discussion of why it believed the children were better off with both parents in the same area. The court acknowledged that both parties had flexible employers, but noted that sometimes work will come first. The court briefly noted that there were not issues that "amounted to anything that would cause me to weigh that somebody is not using their parenting time." However, the court found that this factor weighed slightly against relocation because the relocation would diminish defendant's day-to-day relationship with the children.

The proper inquiry for this factor was whether each parent has complied with or utilized their parenting time. MCL 722.31(4)(b). However, the court instead focused on the importance of having both parents near the children as well as the impact that the move would have on defendant's day-to-day parenting. There was not much evidence presented that pertained to this factor, but the evidence that was presented supported plaintiff's position. Plaintiff testified that defendant was frequently not home with the children during his parenting time. Testimony from both parties suggested that defendant frequently left the children with his sister or a babysitter during his parenting time. Plaintiff read several text messages she had exchanged with defendant pertaining to instances in which defendant had the opportunity to spend time with or transport the children, but was unable to because of work obligations. Finally, defendant testified about an incident in which he was supposed to have the children during their spring break, but a misunderstanding on his end resulted in plaintiff's taking the children. The court briefly acknowledged that these concerns existed, but stated that they did not amount "to anything that would cause me to weigh that somebody is not using their parenting time." Despite making this statement, the court then found that this factor favored defendant's position because the change would impact defendant's day-to-day relationship with the children. Put differently, the court's sole basis for finding that this factor favored defendant was something that would only properly have been considered under factors (a) or (c).

For these reasons, we vacate the trial court's finding that this factor weighed against relocation.

## C. ABILITY TO PRESERVE AND FOSTER PARENTAL RELATIONSHIP

The trial court erred by basing its analysis on whether the children were better off with the old parenting time schedule when the proper inquiry was whether a modified parenting schedule could foster and preserve the parental relationship, irrespective of the previous schedule.

"The visiting-time schedule under MCL 772.31(4)(c) need not be equal to the prior visitation plan in all respects." *Moote v Moote*, 329 Mich App 474, 483; 942 NW2d 660 (2019)

(quotation marks and citation omitted). Thus, "the inquiry under factor (c) is not which plan, the current visitation plan or the proposed schedule, is the best plan. Rather, the inquiry is only whether the proposed parenting-time schedule provides a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011) (quotation marks and citation omitted). This decision must be made "without regard to whether plaintiff's proposed schedule was equally beneficial to the [children] as the current visitation plan." *Id.* "In applying factor (c), a trial court should consider the financial feasibility of the new visitation plan and the ages of the children, as well as the use of modern technology." *Id.* at 583 (citation omitted). Indeed, this Court has recognized that "[t]he separation between a parent and a child can be diminished by the use of modern communication technology." *Id.* (quotation marks and citation omitted).

At the time that plaintiff moved for change of domicile, she was the primary physical custodian of the children. Defendant had parenting time every other weekend and on Wednesday nights. Plaintiff's proposed new schedule would grant defendant parenting time all summer, during the children's three one-week long breaks during the school year, and the possibility of long weekend visits in Vermont or Michigan. With respect to this factor, the court said, "And the same reasoning and analysis [from factor (b)] applies to three. I essentially subsume what I just said in [factor (c)]." The court did not make any findings specifically for factor (c). As is discussed above, under factor (b) the court found that the children were better off with both parents being local, and was concerned that the move would diminish defendant's day-to-day relationship with the children.

Despite caselaw dictating that it not do so, *id.* at 584, the court's decision was made almost entirely by comparing the proposed schedule to the old schedule. The court specifically stated that if the move were allowed, "the results won't be *as good* as if both of you were in the same community." [Emphasis added.] However, under plaintiff's proposed parenting schedule, defendant would have custody of the children for the entire summer and for three one-week breaks during the school year. Plaintiff also testified that defendant and the children would have opportunities to see each other during long weekends. The court did not engage in any discussion regarding the relationship defendant would have with the children in such a scenario. The court also failed to consider the financial feasibility of this parenting schedule, the ages of the children, or the availability of modern communication technology, as caselaw suggests it should have. *Id.* at 583.

For these reasons, we vacate the trial court's finding that this factor weighed against relocation.

## IV. CONCLUSION

We vacate the order denying plaintiff's motion to change domicile and remand this case for additional fact-finding consistent with this opinion. Regarding factor (a), the court shall consider the financial advantages of the relocation and shall assess whether these advantages, in conjunction with the rest of the evidence, warrant a finding that factor (a) supports the relocation. Regarding factor (b), the court shall consider only whether the parties have complied with and utilized the parenting time order. Regarding factor (c), the court shall consider whether it would be possible to preserve and foster the relationship between the children and defendant under the

proposed parenting schedule without comparison to the current parenting schedule. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

# Court of Appeals, State of Michigan

## ORDER

Sharon Stoll v Scott Pietila

Docket No.    358542

LC No.        14-015864-DM

Kathleen Jansen
Presiding Judge

Thomas C. Cameron

Michelle M. Rick
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 35 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the court shall consider (a) the financial advantages of relocation and assess whether these advantages, in conjunction with the rest of the evidence, warrant a finding that supports the relocation;  (b) consider only whether the parties have complied with and utilized the parenting order; and (c) consider whether it would be possible to preserve and foster the relationship between the children and defendant under the proposed parenting schedule without comparison to the current parenting schedule. The proceedings on remand are limited to these issues.

The trial court may decide the issues based on the record; or take additional testimony at its discretion if it deems it necessary.  The trial court has 49 days from the Clerk's certification of this order to make its findings on the questions remanded by this Court in writing.  The findings shall be provided to this Court after the completion of proceedings.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings, if any, on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 17, 2022
Date

Chief Clerk