# STATE OF MICHIGAN

# COURT OF APPEALS

MEGHAN ELAINE MATTHEW,

Plaintiff-Appellant,

v

THOMAS WILLIAM TRUDELL,

Defendant-Appellee.

UNPUBLISHED
April 5, 2017

No. 334911
Emmet Circuit Court
LC No. 14-104443-DM

Before: BECKERING, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right a September 1, 2016, trial court order denying plaintiff's motion to change daughter IGT's legal residence from Harbor Springs to Jenison. For the reasons set forth in this opinion, we affirm.

## I. FACTS

IGT was born in 2011, during the parties' marriage. Before the divorce proceedings were commenced in April 2014, plaintiff moved in with her current husband Trevor Matthew and had given birth to his daughter on May 23, 2013. The trial court entered a consent judgment of divorce on October 21, 2014 that awarded the parties joint legal and physical custody of IGT. The trial court listed IGT's domicile as both plaintiff's mailing address in Harbor Springs and defendant's mailing address in Alanson. Further, the trial court found that IGT "ha[d] a legal residence with each parent" and ordered that neither parent could change the child's legal residence "to a location that is more than 100 miles from the child's legal residence with the other party" unless permitted by the trial court or permitted under MCL 722.31. The court awarded each party parenting time on a weekly basis and during holidays as agreed to by the parties or pursuant to the trial court's schedule if unable to agree.

Plaintiff testified that, around this time, defendant began living with his mother Carole and an uncle named Mark. Plaintiff agreed that she and defendant followed the parenting time schedule but plaintiff characterized Carole as IGT's "primary caretaker" during defendant's parenting time.

Plaintiff moved to change IGT's custody on October 21, 2015, shortly after her new marriage. Plaintiff asserted that she and her husband were moving to Grand Rapids, specifically, "the Jenison area" and testified that this move would cause the parties to live three and a half

-1-

hours apart. Plaintiff amended her motion on October 26, 2015 to request a change in IGT's domicile, legal residence, and parenting time schedule.

The court scheduled an evidentiary hearing before a referee. At the hearing, plaintiff testified that on or about November 3, 2015, her husband Matthew started a new job in the Grand Rapids-area in production at Adams Plastics earning $11.78 per hour with full benefits including health insurance for the family. Before that, Matthew worked as a subcontractor in Northern Michigan as a skydiving instructor and IGT was on MiChild for health insurance. Matthew was only able to obtain about three or four months of seasonable work per year as a skydiving instructor and he did not have any benefits. Matthew wanted to relocate to Grand Rapids for better job opportunities and plaintiff testified that there were no stable year-round manufacturing jobs in Northern Michigan. Matthew owned a trailer home in Harbor Springs where he and plaintiff resided with IGT and their daughter. After relocating, Matthew and plaintiff signed a lease agreement on a two-bedroom apartment in Jenison.

Plaintiff testified that she enrolled at Ross Medical Education Center in Kentwood where she planned to complete the accelerated six-month medical assistant program. At the time of the hearing, plaintiff was completing the administrative portion of the medical assistant program by taking online classes; however, plaintiff explained that for the clinical aspect of the program, she needed to be in Grand Rapids. Plaintiff testified that clinical externships often led to job-placement with an employer. She stated that the program had a 97-percent job placement rate and stated that medical assistants can earn between $17 and $22 per hour in the Grand Rapids-area. Plaintiff testified that there were more opportunities for medical assistants in the Grand Rapids-area including three major hospital systems and multiple medical offices. She stated that she researched the job market for medical assistants in Northern Michigan and determined that there were not as many opportunities as in Grand Rapids. Plaintiff also obtained a part-time secretarial job at a Metro Health office earning $12.00 per hour.

In contrast, in Northern Michigan, plaintiff worked a series of jobs in customer service for a medical supplier, as a telephone receptionist for a skydiving scheduler, in addition to working in asset-protection at Meijer. In November 2015, following a surgery, plaintiff quit her last job in customer service where she earned $11.50 per hour with benefits. Plaintiff agreed that there were secretarial jobs in Northern Michigan earning about $12.00 per hour, but she maintained that she would have better opportunities to obtain a career-job in Grand Rapids as a medical assistant.

Plaintiff explained that in Grand Rapids she would have more of a support network of her dad and siblings and aunts, uncles and cousins. In contrast, in Northern Michigan, her only relatives included her estranged mother and younger siblings; her relatives did not help her with care for IGT. Plaintiff agreed that defendant did not miss any of his parenting time. Defendant lived with his mother Carole and an uncle in a three-bedroom home. When IGT was with defendant for his parenting week, IGT would share a room with Carole. Carole smoked and provided most of the care for IGT, while defendant worked at FedEx as a deliveryman. IGT had asthma and on two occasions returned from defendant's home with pinworms and lice. Plaintiff agreed that defendant was involved in IGT's life including her school and medical decisions, but Carole had to provide most of the daily care for IGT.

-2-

Plaintiff testified that relocating to Grand Rapids would benefit IGT because it would allow her to have a stable two-parent home to live in with her sister. In addition, plaintiff testified that she did research and learned that Jenison schools were ranked higher than Petoskey area schools and the crime rate was lower in Jenison. Furthermore, relocating to Grand Rapids would provide financial stability and allow Matthew to have year-round employment and would give her more career opportunities as a medical assistant. Plaintiff testified that there were more opportunities for extracurricular and cultural activities and greater diversity in the Grand Rapids area, which would be good for IGT in the long-term. Plaintiff testified that she proposed to have parenting time during the week in Grand Rapids, while defendant could have parenting time three weekends per month, holidays, summer break, and spring and other school breaks. Plaintiff testified that defendant indicated he was opposed to the idea because he did not want IGT in the car so much driving the three-hour trip to see him and because he thought that IGT should grow up in the place where she was born.

On cross-examination, plaintiff agreed that there were secretarial jobs in Northern Michigan similar to the one she recently obtained at Metro Health in Grand Rapids and she agreed that there were jobs for medical assistants in Northern Michigan. However, plaintiff maintained that there was lower demand in Northern Michigan and more career opportunities in Grand Rapids. Plaintiff testified that she was attending Ross Medical Education Center with the current parenting-time arrangement because she was able to complete some of the initial classes online. However, plaintiff stated she would complete the clinical portion in Grand Rapids.

Matthew testified that he married plaintiff in October 2015. At the time, Matthew owned a mobile home in Harbor Springs and worked as a skydiving instructor doing seasonal work. Specifically, Matthew worked as an independent contractor and did not have benefits, although he received a stipend for benefits. Matthew and plaintiff had a child together before they got married. Matthew explained that, following the birth of his child and his marriage, he began to have a different view on the inherent risks of skydiving so he decided to seek different employment. Matthew looked at some opportunities in Northern Michigan, but they were mostly seasonal work so he applied for manufacturing work in Grand Rapids. Matthew started working full-time at Adams Plastics in Wyoming on or about November 3, 2015. Matthew earned $11.78 per hour, which amounted to about the same amount that he would earn as a skydiving instructor. However, unlike his former job, his new job included health, vision, dental, and life insurance for his family. Matthew testified that Adams was expanding and hiring people and there were no concerns about layoffs. Matthew stated that the new job at Adams was much more stable than his work as a skydiving instructor. There was the potential for promotions and raises. Matthew explained that he viewed his work at Adams as a "stepping stone" job to something better and he planned to go back to school or find his own career after plaintiff finished her schooling at Ross. Matthew stated that he planned to sell the trailer in Harbor Springs if the court allowed IGT to move and he and plaintiff did not have a "plan B" in the event the court denied plaintiff's motion and they would need to discuss the issue. Matthew stated that there were greater opportunities in Grand Rapids in the job market, education, and the potential to see different people and cultures. He also had greater family support in Grand Rapids.

Following the hearing, the referee recommended that the trial court deny plaintiff's motion to change IGT's legal residence because plaintiff "failed to carry her burden" to show

that the change was warranted pursuant to MCL 722.31(4). Because plaintiff failed to meet this burden the referee reasoned that it was "unnecessary to examine whether there existed an established custodial environment between [IGT] and Defendant." Plaintiff objected to the recommendation. She argued that that the testimony established by a preponderance of the evidence that a change in legal residence should be granted pursuant to MCL 722.31(4).

Following a hearing, the trial court noted that plaintiff was apparently settled in Grand Rapids and that IGT was about to start school. It affirmed the referee's recommendation, finding that plaintiff "failed to prove by a preponderance of the evidence that her proposed move of IGT to Jenison, Michigan is warranted." Its analysis centered on de novo review of MCL 722.31(4) factors (a), (b), and (c); it found that plaintiff failed to meet her burden under any of these three factors. The trial court found factors (d) and (e) irrelevant. This appeal ensued.

## II. STANDARD OF REVIEW

Pursuant to MCL 722.28, in child custody disputes, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." Accordingly, this Court reviews for an abuse of discretion a trial court's decision on whether to grant a motion for change of domicile and its decision on whether to change custody. *Fletcher v Fletcher*, 447 Mich 871, 879-880; 526 NW2d 889 (1994); *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). The trial court's findings of fact are reviewed under the great weight of the evidence standard. *Fletcher*, 447 Mich at 878-879. "This Court may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Rains v Rains*, 301 Mich App 313, 324-325; 836 NW2d 709 (2013) (quotation marks and citations omitted; alteration in original).

## III. GOVERNING LAW

Under the Child Custody Act (CCA), MCL 722.21 *et seq*, absent court approval, when a child's custody is governed by a court order, a parent may not change the legal residence of that child to a location more than 100 miles away. MCL 722.31(1). This Court has previously explained the framework governing a motion to change domicile as follows:

A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio* factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have

-4-

been established by clear and convincing evidence. [*Rains*, 301 Mich App at 325 (footnote omitted).]

The first step in the above-cited framework involves applying the factors set forth in MCL 722.31(4), which provides as follows:

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child. [MCL 722.31(4).]

 "[T]he moving party [must] establish[] by a preponderance of the evidence that the factors . . . support a motion for a change of domicile." *Rains*, 301 Mich App at 325.

IV.  APPLICATION OF MCL 722.31(4)

Factor (a) directs a court to consider "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent."  In this case, with respect to factor (a), the trial court found that plaintiff failed to prove by a preponderance of the evidence that the residence change had the capacity to improve the life of plaintiff or the child.  With respect to the child, the court found that IGT had spent her entire life in Northern Michigan with both parents and extended family.  While plaintiff offered general testimony that Jenison was a better school district, nothing in the record substantiated that claim.  The court noted that plaintiff did not offer any testimony on what the plans were for before or after school care for IGT and there was no testimony regarding what activities she would be enrolled in.  There was nothing to substantiate that crime rates were lower in Jenison as opposed to Harbor Springs.  The court also noted that plaintiff failed to offer testimony regarding the impact the

move would have on IGT's family relationships. While IGT would benefit by being closer to plaintiff's extended family, the benefit did not outweigh the negative impact the move would have on IGT's relationship with defendant, her father.

With respect to plaintiff, the trial court noted that plaintiff was furthering her education that would provide her with gainful employment and that Matthew obtained full-time employment in the Grand Rapids area. The court acknowledged that plaintiff would be closer to family in Grand Rapids, but reasoned that "other than moving closer to family the Plaintiff has not shown that relocating for education or employment warrants a change in the child's legal residence." The court noted that Matthew "decided to change careers and they wanted to move somewhere with more opportunity." Matthew "briefly" looked for jobs in Northern Michigan, and "despite finding full time, year round employment, he states his income in the new position is the same." The court acknowledged that while Matthew did have benefits at his new job, Matthew stated that the job was a "stepping stone" job. The court considered Matthew's testimony regarding his job "speculative," and plaintiff's testimony about her "job history and search" as "equally speculative." The court reasoned:

> Plaintiff has had 3 jobs in as many years. Her last job before the move to Jenison provided health insurance but paid 50 cents less per hour than her current secretarial position. She did not testify she applied for or secured a position as a medical assistant in Grand Rapids.

> Plaintiff presented no testimony that she attempted to find comparable work in northern Michigan before moving. She did not present evidence that she inquired into a Medical Assistant program in the Petoskey area or that she applied for any positions of any kind in Petoskey. Plaintiff acknowledged there are comparable jobs available at any number of hospitals or offices closer to Harbor Springs, but she thought there were more in Grand Rapids.

> While Plaintiff claims she would have more opportunity in Grand Rapids, there is nothing in the record, aside from her own hope and her statements that such opportunities may be available, to support this claim. The Plaintiff's desire to be employed in an area that may provide an opportunity for advancement appears to have been the driving force behind the move.

> In conclusion, Plaintiff has not met her burden of providing beyond a preponderance that the quality of hers or [IGT's] lives will be improved by the move to the Grand Rapids area such that a relocation of the child's domicile is warranted.

Here, the trial court's findings were not against the great weight of the evidence. Plaintiff argues that the trial court held her to an improper burden. She asserts that the trial court required her to prove that a specific degree of improvement would occur to her life and IGT's life, instead of requiring her to prove by a preponderance of the evidence that their lives had the capacity to improve. However, the trial court cited the correct preponderance of the evidence standard and it never articulated a specific degree to which plaintiff needed to show that her family's financial

situation would improve in order to permit the legal residence change. The court applied the correct burden of proof.

The trial court found that both plaintiff and her husband could make comparable salaries in each area. Plaintiff testified that she would make $.50 per hour more at the job she was offered in Grand Rapids than she made at her most recent job in northern Michigan. Her husband described his pay as "about the same." It appears that the family could secure benefits in either area; plaintiff testified that she had health insurance at her most recent job in Northern Michigan and her husband testified that he had health insurance at his Grand Rapids area job. Plaintiff spoke about seeking a medical assistant job in the Grand Rapids area after she completed her training/educational program. She testified that the salary and demand for jobs was higher in the Grand Rapids area. However, she also acknowledged that there were medical assistant jobs in Northern Michigan. The trial court also found that IGT had access to extended family in Northern Michigan as well and that IGT had formed friendships in Northern Michigan, and there was no evidence that IGT would lack access to extracurricular activities in Northern Michigan now that she is over the age of five. In short, the record does not clearly preponderate in the opposite direction of these findings. *Rains*, 301 Mich App at 324-325.

Factor (b) directs the trial court to consider the degree to which each parent has utilized his or her parenting time. MCL 722.31(4)(b). Here, the trial court considered plaintiff's testimony that both plaintiff and defendant were involved in IGT's life and concluded that both parents utilized their parenting time. While Carole provided care as a grandmother while defendant was working, contrary to plaintiff's argument, this did not support that defendant did not utilize his parenting time. In short, the trial court considered the relevant evidence in making these findings with respect to factor (b) and the findings were not against the great weight of the evidence. *Rains*, 301 Mich App at 324-325.

Factor (c) focuses on "[t]he degree to which the court is satisfied that . . . it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule" to "preserv[e] and foster[] the parental relationship between the child and each parent" "if the court permits the legal residence change"; and whether each parent is likely to comply with the modification." MCL 722.31(4)(c). The court made the following findings with respect to this factor:

> Plaintiff acknowledged the proposed plan put the child in a car for 21 to 28 hours per month due to the 3 ½ hour one way commute from northern Michigan to southern Michigan. She did not see this as a problem nor did she present any understanding of the impact this would have on the child or her relationship with her Father. There is no testimony regarding the financial impact on either party or feasibility of these weekly trips.

> The schedule proposed by Plaintiff provides Defendant with 3 weekends per month reducing his overnights to 6 per month. The Plaintiff suggests Defendant have extended time during holidays and summer break to make up for the loss of time. However, Plaintiff acknowledged Defendant's work as a FedEx driver could make extended time during holidays difficult.

Plaintiff stated Defendant Father shows interest in his daughter and attends her school conference. The proposed parenting time plan eliminates the Father's opportunity to attend school activities on weekdays or be involved in her day-to-day life during the school year.

In conclusion, the record submitted by Plaintiff fails to establish by a preponderance of the evidence, how a parenting time schedule would be arranged to adequately *preserve and foster* the parental relationship between [IGT] and her father.

The court's findings with respect to factor (c) were not against the great weight of the evidence. Here, the evidence showed that defendant was involved in IGT's daily life in Northern Michigan. He participated in IGT's schooling and participated in important decisions regarding her livelihood. Defendant always took advantage of his parenting time and was clearly bonded with IGT. Plaintiff proposed to move the child over three hours away and this would significantly impact defendant's ability to be involved in his daughter's life. He would no longer be able to participate on a daily basis in her schooling or after-school programs or any future sporting events or extra-curricular activities that IGT may become involved in. While plaintiff proposed that defendant could have IGT for three weekends per month, the trial court noted that a significant portion of this time would be spent in the car driving to and from Grand Rapids, which would limit the amount of time defendant had with IGT. In short, the trial court's findings with respect to factor (c) were not against the great weight of the evidence. *Rains*, 301 Mich App at 324-325.

The trial court concluded that factors (d) (extent to which the change is motivated by a desire to secure a financial advantage with regard to child support) and (e) (domestic violence), were inapplicable in the present case. This finding was not erroneous.

In sum, the trial court's factual findings with regard to the MCL 722.31(4) factors were not against the great weight of the evidence. Therefore, the trial court did not abuse its discretion in denying plaintiff's motion to change IGT's legal residence.

## V. CUSTODIAL ENVIRONMENT/BEST INTERESTS

Plaintiff argues that even though the trial court denied her motion for a change in domicile, the trial court should have analyzed the impact her relocation had on the custodial environment and the best interests of the child. This issue involves application of the CCA, which is a question of law we review de novo. *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 133; 860 NW2d 51 (2014).

Plaintiff cites *Yachcik v Yachcik*, ___Mich App___; ___NW2d___(2017) (Docket No. 333834) in support of her argument that the trial court was required to consider the custodial environment and best interest factors. In *Yachcik*, the parties lived in Alpena, Michigan, they had a son, GY, together while they were married, and then they divorced. Slip op. at 1. Following the divorce, the parties agreed to a parenting time arrangement on an alternating weekly basis. *Id*. In August 2012, the plaintiff mother married a man, Benjamin Wallen, who lived and worked in Pennsylvania. *Id*. at 1-2. The plaintiff moved to change GY's domicile to

Pennsylvania and indicated during the hearing that she intended to move to Pennsylvania regardless of the court's decision on the motion. *Id*. at 2. The defendant father opposed the motion, and verbally requested that the court award him primary custody of GY in the event that the plaintiff moved to Pennsylvania. *Id*. The trial court denied the plaintiff's motion to change domicile, concluding that the plaintiff failed to meet her burden under MCL 722.31(4). *Id*. at 2-3. In addition, "[f]ollowing the hearing on plaintiff's motion to change the child's domicile, the trial court held that the inverse of plaintiff's proposed parenting time schedule would be in effect in the event that plaintiff moved to Pennsylvania." *Id*. at 12. Specifically, the trial court stated:

> In the event that the Plaintiff moves from the area to the state of Pennsylvania she is to enjoy the same parenting time schedule for herself that she proposed for Mr. Yachcik at the hearing in this cause. If she does not leave this area, the Order of week on week off *will control custody* and parenting time. [Emphasis added in *Yachcik*, slip op at 14.]

On appeal, this Court affirmed the trial court's holding with respect to its decision on the change of domicile; however, this Court agreed with the plaintiff that the trial court erred when it modified the prior custody order without first determining whether there was a custodial environment and whether the change was in GY's best interests. *Id*. at 11-14.

In addressing the issue, this Court turned to *Grew v Knox*, 265 Mich App 333; 694 NW2d 772 (2005). In *Grew*, the plaintiff moved to change the legal residence of the parties' child from Monroe County to Traverse City. *Id*. at 334-335. The defendant objected and moved for temporary custody of the child. *Id*. The trial court denied the motion to change domicile and, as a result, "the trial court did not hold a hearing on defendant's motion for a change of custody. However, despite the lack of a custody hearing, the trial court granted temporary physical custody to defendant for as long as plaintiff continued to live in [Traverse City]." *Id*. at 336. The *Grew* Court held that the trial court "erred in awarding temporary physical custody of the child to defendant without conducting an evidentiary hearing or making findings of fact pursuant to MCL 722.23 and 722.27." The *Grew* Court reasoned as follows:

> the trial court altered the parties' custody arrangements after conducting an evidentiary hearing on plaintiff's motion for a change of legal residence. Although a hearing under MCL 722.31 does take into consideration the child's interests, see MCL 722.31(4), the child's best interests as delineated by MCL 722.23 are not the primary focus of the hearing. Likewise, had the court held a hearing regarding defendant's motion for a change of custody, the burden would have been on defendant to prove by clear and convincing evidence that the change was in the child's best interests, MCL 722.27(1)(c), rather than on plaintiff, as was the case in the hearing under plaintiff's motion for a change of legal residence. Yet once the trial court determined that plaintiff had not met her burden under MCL 722.31, the trial court ended the hearing and awarded temporary custody to defendant without hearing testimony regarding whether a change in custody was in the child's best interests or making findings regarding the child's best interests. A trial court should not temporarily change custody by a post-judgment interim order when it could not do so by a final order changing custody. [] Whether a court is establishing custody in an original matter, or

altering a prior custody order, the requirement is the same: specific findings of fact regarding each of twelve factors that are to be taken into account in determining the best interests of the child must be made. [*Grew*, 265 Mich App at 337 (quotation marks and citations omitted).]

The *Grew* Court concluded:

The court's determination that a change of the child's legal residence was not warranted, coupled with plaintiff's intention to remain in Traverse City, necessitated a review of the current custody situation, and the trial court should have analyzed the best interest factors under MCL 722.23 and 722.27 before making any changes to custody. [] Consequently, the trial court abused its discretion when it awarded temporary custody to defendant after a hearing on change of legal residence without finding that it was in the child's best interests. [*Grew*, 265 Mich App at 337-338.]

In *Yachcik*, this Court relied on *Grew* and held that the trial court erred when, after denying the plaintiff mother's motion to change domicile, it modified the custody order awarding physical custody to the defendant father. The *Yachcik* Court held as follows:

Although *Grew* is distinguishable to a certain extent because defendant did not bring a separate motion for temporary custody in this case, we believe that the analysis in *Grew* can be understood as generally holding that a trial court is required to analyze the best interest factors *before entering a custody order that alters an established custodial environment, even in cases when that change in custody is prompted by a situation where a parent, whose motion for a change in domicile was denied*, still decides to move, or remain, a significant distance away. Further, even if we assume, arguendo, that *Grew* is not generally applicable in these situations, defendant's actions in this case were similar to the defendant's actions in *Grew*. Defendant did not file a separate motion requesting a change in custody in this case, but he asked for such a change in his response to plaintiff's motion by requesting modification of the parenting time schedule and the current custody arrangement so that he would be awarded "primary physical custody" if plaintiff moved to Pennsylvania. Correspondingly, the trial court implicitly recognized that its alteration of the parenting time arrangement, upon plaintiff's move to Pennsylvania, constituted a change in custody. . . . [*Yachcik*, slip op at 13-14.]

In this case, unlike in *Grew* and *Yachcik*, the trial court did not modify an existing custody order after it denied plaintiff's motion to change domicile. The previous order providing week-on-week-off parenting time remained in effect. Perhaps this is because plaintiff and her husband Matthew equivocated on what they planned to do in the event the trial court denied the motion to change domicile. Matthew testified that he and plaintiff did not have a "plan B" and they would need to discuss the issue. Plaintiff did not clearly testify as to whether she was living in Grand Rapids on a permanent basis or whether she planned to move there irrespective of the trial court's ruling. Thus, this case is different from *Grew* and *Yachcik*. Here, the trial court did not award physical custody to defendant; rather, the former order remained in effect. To the

extent that plaintiff intends to relocate to Grand Rapids on a permanent basis irrespective of the court's order, then plaintiff should file a motion to modify the present custody order to award parenting time that is in IGT's best interests. If plaintiff were to make this request, then the trial court would be required to first determine whether there is a custodial environment with both parents and then fashion a custody arrangement that is in IGT's best interests. See MCL 722.27(1)(c); *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003).

Affirmed.

/s/ Jane M. Beckering
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello