*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HEIDI ANNE HANSEN,

        Plaintiff-Appellant,

v

STEPHEN MICHAEL SCHALOW,

        Defendant-Appellee.

UNPUBLISHED
January 28, 2026
8:31 AM

No. 373987
Dickinson Circuit Court
LC No. 2021-020632-DM

AFTER REMAND

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

This case is before us again after we remanded the case to the trial court to decide a then-pending motion to change the children's domicile. In her January 2025 claim of appeal, plaintiff Heidi Anne Hansen challenged the trial court's December 2024 written opinion and order denying her motion for a change of domicile. In particular, plaintiff challenged several of the trial court's factual findings with regard to the best-interest factors of MCL 722.23. However, in April 2025, while her appeal was pending, plaintiff filed another motion to change domicile in the trial court. Thus, in lieu of deciding the merits of her appeal, we remanded to the trial court to decide that motion while retaining jurisdiction. *Hansen v Schalow*, unpublished per curiam opinion of the Court of Appeals, issued August 15, 2025 (Docket No. 373987).

On remand, the trial court held a two-day hearing. At the conclusion of the hearing, the trial court granted the latest motion to change domicile, this time finding that the balance of the MCL 722.23 best-interest factors favored plaintiff and therefore favored the overall change of domicile. We find no error in this regard. Therefore, we affirm.

## I. FACTS

In our previous opinion, we explained the relevant facts and procedural background of this case:

This case arises out of the divorce between plaintiff and defendant, Stephen Michael Schalow. The parties had three children during their marriage but were divorced in August 2022. The trial court granted the parties joint legal and physical custody of the minor children. At that time, both parties lived in Dickinson County, Michigan.

In October 2023, plaintiff obtained a personal protection order (PPO) against defendant because, among other reasons, defendant acted belligerently toward her at a wedding, then arrived drunk at her house in the middle of the night and would not leave until he was removed by the police. In March 2024, plaintiff moved for a change of domicile because she wished to move to Baraboo, Wisconsin to be with a new romantic partner. Plaintiff moved to Baraboo in September 2024 and dropped the PPO against defendant around that time.

Following an October 2024 hearing on the motion to change domicile, the trial court found in a November 2024 written opinion and order that plaintiff met her initial burden of proof under MCL 722.31(4) to change the children's residence, that the children had an established custodial environment in Dickinson County, and that the proposed change of domicile would alter the children's established custodial environment. When addressing these issues, the trial court made certain observations tending to support plaintiff's position, such as the following:

Plaintiff's Exhibit #5 depicts the children's condition when they were returned to their mother at a parenting exchange. While this may not be how they typically look at the exchanges, Mr. Schalow seemed to think that it was typical for children that had been out playing prior to the exchange. However, it appears the children's hygiene had been neglected for more than just a few hours while they were out playing. The stickers and residual glue on their skin, residual tattoos, dirt imbedded in their nails, and the absolutely filthy hands that could have been washed before transportation for an exchange are either an indication of Mr. Schalow's lack of appropriate hygiene or a desire to annoy Ms. Hansen by turning the children over at the exchange time in a deplorable condition. It has to be a consideration when a court is determining whether or not the proposed change has the capacity to improve their quality of life.

* * *

Mr. Schalow has certainly engaged in some bizarre and controlling behavior in the past. He has also displayed his anger and intimidating behaviors even within the court room. Ms. Hansen has further testified about domestic violence that did occur within the relationship. The court has considered the previous evidence and

-2-

indicates that this is not a factor that weighs heavily in the court's decision at this time.

However, in a subsequent written opinion and order from which plaintiff appeals, the trial court found that plaintiff failed to show, by clear and convincing evidence, that a change of domicile would be in the children's best interests. Nonetheless, the trial court again made multiple statements implying support of plaintiff's ultimate position, some of which are as follows:

> Prior to her relocation, it appears that Ms. Hansen did spend more time with the minor children because of Mr. Schalow's demanding schedule. Given Mr. Schalow's actions described in the November 11, 2024, finding of fact, and given his conduct towards Ms. Hansen with regard to the children, it is difficult to determine whether he is truly able to separate the children's needs from his own and prioritize the children. . . .
>
> * * *
>
> This court is hesitant to say that either parent's moral fitness is lacking. Although Mr. Schalow has put some character flaws on display with regard to his anger, namely his obsession with Ms. Hansen, and his inability to deal appropriately with the situation involving [her new partner], it does not make him morally unfit.
>
> * * *
>
> Mr. Schalow is advised that this court's patience with his hostile and manipulate behavior is wearing thin. Continued failure to **genuinely** facilitate the relationship between Ms. Hansen and the children could result in a different outcome going forward depending on other factors. [Emphasis in original.]

This appeal followed. On appeal, plaintiff argues that the trial court erred by finding that she failed to establish, by clear and convincing evidence, that a change of domicile would be in the children's best interests. Specifically, plaintiff argues that the trial court made erroneous findings of fact regarding best-interests factors MCL 722.23(a), (c), (f), (h), and (j). Plaintiff also argues that the trial court's overall decision to deny her motion was erroneous as well, notwithstanding its specific findings of fact. [*Hansen*, unpub op at 1-3 (footnote omitted).]

In lieu of deciding the appeal on the merits, we remanded this case to the trial court for further proceedings while retaining jurisdiction:

> Ordinarily, we would decide the merits of plaintiff's appeal at this time by addressing whether the trial court erred in its December 2024 written opinion and order denying her motion to change the domicile of the children. However, according to the lower-court record before us, on April 25, 2025, plaintiff filed

another motion to change the domicile of the children. Some of the allegations therein are similar to the ones raised in her earlier motion, while other allegations are new. Further, according to the publicly available register of actions for this case, it appears that the trial court has not yet decided the motion notwithstanding that it would have jurisdiction to do so. See *Safdar v Aziz*, 501 Mich 213, 215; 912 NW2d 511 (2018) (holding that "a circuit court has jurisdiction to consider a motion to change the domicile of a minor child established by a custody award in a divorce judgment while that underlying judgment is pending on appeal"). Therefore, in lieu of deciding the merits of this appeal at the present time, we remand this case to the trial court to decide plaintiff's April 2025 motion to change the domicile of the children. The losing party may then seek our review of that decision, if it so chooses. [*Id*. at 3.]

On remand, the trial court held a two-day hearing to decide the recent change-of-domicile motion, receiving testimony from the parties and other witnesses. At the conclusion of the hearing, the trial court decided to grant plaintiff's motion to change domicile, reasoning that (1) plaintiff established by a preponderance of the evidence the factors set forth in MCL 722.31(4), i.e., the *D'Onofrio* factors [*D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976)]; (2) an established custodial environment existed with both parties; (3) the change of domicile would modify the children's established custodial environment; and (4) plaintiff established by clear and convincing evidence that the best-interest factors of MCL 722.23 weigh in favor of the change of domicile. In particular, with regard to the best-interest factors of MCL 722.23, the trial court found that factors (a), (b), (g), (j), and (k) favored plaintiff; factor (h) favored defendant; and factors (c), (d), (e), and (f) favored neither party.[1]

The following day, on December 18, 2025, the trial court entered its written order memorializing its decision on the record, providing that "the domicile of the minor children shall now be Saulk County, Wisconsin, as well as Dickinson County, Michigan," and that "Plaintiff will be the primary physical custodian of the children with the parties sharing joint legal custody." The order further provided that "the parties may attempt to reach an agreement with regard to the specific parenting time schedule. If the parties are unable to reach an agreement, the court will enter an order providing for parenting time . . . on January 16, 2026, at 1:15 p.m."[2]

---

[1] Concerning factor (i), "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference," MCL 722.23(i), the trial court stated that two of the three children "did express a preference, albeit not terribly clear," and the third child "did not express a preference."

[2] The publicly available register of actions for this case, accessed January 22, 2026, does not indicate that the scheduled January 16, 2026 hearing was held. Nor does it indicate that the trial court entered any order after its December 18, 2025 order quoted herein.

The transcripts of the two-day hearing were duly filed with this Court. Thus, this matter is once again before us.[3]

## II. STANDARD OF REVIEW

"This Court must affirm all custody orders unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "Thus, a trial court's findings regarding the existence of an established custodial environment and with respect to each factor regarding the best interest of a child under MCL 722.23 should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. "The trial court's discretionary rulings, such as to whom to award custody, are reviewed for an abuse of discretion." *Id*. "An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. "This Court reviews questions of law for clear legal error that occurs when a trial court incorrectly chooses, interprets, or applies the law." *Id*. at 706.

## III. DISCUSSION

When a child's custody or parenting time is governed by court order, the trial court "shall not change the legal residence of the child except in compliance with [MCL 722.31]." MCR 3.211(C)(3). MCL 722.31(4) provides:

Before permitting a legal residence change . . . , the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship

---

[3] While neither party has filed a supplemental brief, claim of appeal, or other document in this Court urging us to either affirm or reverse the trial court's December 18, 2025 order, we will nonetheless address the merits of that order, in particular the trial court's decision concerning the best-interest factors of MCL 722.23.

between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

If the trial court finds that the MCL 722.31(4) factors are satisfied by a preponderance of the evidence, the trial court must then render three additional factual determinations before it may order a change of domicile. See *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013). In *Rains*, this Court summarized the overall process as follows:

A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio* factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Id.* (footnote omitted).]

In this case, as noted, the trial court found in both its November 2024 written opinion and order, as well as its December 2025 opinion from the bench, that plaintiff satisfied her initial burden of proof under MCL 722.31(4) to change the children's residence, that the children had an established custodial environment in Dickinson County, and that the proposed change of domicile would modify the children's established custodial environment. That is, the trial court found both before and on remand that the first three steps of the *Rains* process were satisfied. Defendant did not challenge those findings when plaintiff filed her original appeal, nor did he file any appeal, brief, or other document following the trial court's decision on remand. Thus, we will proceed to address the fourth step of the *Rains* process, i.e., the step that plaintiff challenged in her original appeal and that the trial court decided in her favor on remand.[4]

---

[4] Regardless, we briefly note our agreement with the trial court that the first three steps of the *Rains* process were satisfied. The trial court adequately explained why plaintiff satisfied MCL 722.31(4), and there is no reasonable dispute that the children had an established custodial environment in Dickinson County that would be modified by the proposed change of domicile.

MCL 722.23 of the Child Custody Act, MCL 722.21 *et seq.*, provides as follows:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

In this case, after reviewing the entire record, with particular attention to the proceedings on remand, we conclude that the trial court's findings as to the MCL 722.23 best-interest factors were not against the great weight of the evidence. As the trial court explained in its opinion from the bench, factor (a) favored plaintiff because defendant, on at least a few occasions, appeared to

unnecessarily delay seeking help for the children in school or health matters because doing so might give him the upper hand in his relationship with plaintiff. This undermined his parenting abilities. Factor (b) also favored plaintiff because there was testimony that defendant had consumed alcohol on more than one recent occasion despite his history of multiple legal issues that were alcohol-related. This, the trial court explained, may have an adverse effect on his future parenting abilities.

Factor (c) favored neither party because both plaintiff and defendant had the ability to provide the children with basic necessities such as food and clothing, and factor (d) favored neither party because plaintiff had a stable living situation in Wisconsin for the children, while defendant had a stable living situation in Michigan for the children. Further, for essentially the same reasons, factor (e) favored neither party as well. In addition, we find no reason to disagree with the trial court's assessment that factor (f), which concerns the moral fitness of the parties, favored neither party because defendant's behavior did not "necessarily reflect[] a moral shortcoming."

However, factor (g) favored plaintiff because defendant seemingly did not accept plaintiff's relationship with her new husband, which may suggest a mental-health issue that requires counseling. On the other hand, factor (h) slightly favored defendant because "Dickinson County has been the community of record for [the children]," notwithstanding that the children had spent additional time in Wisconsin in recent months.

With regard to factor (i), which concerns the reasonable preference of the child, the trial court stated from the bench that two of the three children "did express a preference, albeit not terribly clear," and the third child "did not express a preference." However, the trial court did not further elaborate upon this issue, specifically whether it accorded any weight to that preference, so we may treat this factor as neutral. See *Wilson v Gauck*, 167 Mich App 90, 97; 421 NW2d 582 (1988).

Factor (j) favored plaintiff because, as the trial court was aware throughout these proceedings, the record did not indicate that defendant was willing to co-parent with plaintiff. Rather, he engaged in certain hostile and difficult behaviors that made plaintiff's attempt to parent their children unnecessarily difficult. Factor (k) slightly favored plaintiff because there was some evidence of domestic violence by defendant years ago, but the trial court added that "the domestic violence in this case is—is far enough removed from the decision at this point, that it does not weigh heavily." Finally, the trial court did not expressly identify whether factor (*l*), which allows the trial court to consider any other matter not considered by the previous factors, favored either party. However, the trial court did note that defendant had engaged in increasingly hostile and uncooperative behavior during the past several months.

All of the trial court's factual findings discussed above concerning the best-interest factors of MCL 722.23 were supported by the record and therefore were not against the great weight of the evidence. Nor was its overall decision to grant plaintiff's motion to change domicile an abuse of discretion. In this regard, the trial court thoroughly and adequately explained its ruling that, in light of a "[q]uality of life analysis as it pertains to the children," their quality of life "would be enhanced by the move to Baraboo." Accordingly, we affirm the trial court's decision to grant plaintiff's April 2025 motion to change domicile.

## IV. CONCLUSION

The trial court did not make factual findings against the great weight of the evidence, commit a palpable abuse of discretion, or make a clear legal error on a major issue. Therefore, we affirm.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi