*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANA MARIE BAUER,

        Plaintiff/Counterdefendant-Appellee,

v

TIMOTHY JOHN WAIDELICH,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
April 23, 2026
8:37 AM

Nos. 369519; 370605; 373564; 374353
St. Clair Circuit Court
Family Division
LC No. 14-000583-DM

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

In this consolidated appeal, the parties dispute issues relating to legal custody, parenting time, and contempt of court. We dismiss defendant-father's appeals arising from the contempt proceedings for lack of jurisdiction and affirm the trial court's judgment regarding legal custody and parenting time.

## I. FACTUAL BACKGROUND

This matter has a lengthy history. The parties divorced in March 2015 and initially shared joint legal and physical custody of their two children, HW and AW. An earlier appeal to this Court involved concerns about father's aggressive approach to the children's medical treatment:[1]

---

[1] An even earlier appeal to this Court involved a petition by father seeking sole physical custody of the children due to what he alleged was a series of baseless complaints plaintiff filed against him with Children's Protective Services; the trial court denied the motion and this Court affirmed. *Bauer v Waidelick*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2017 (Docket No. 336876), pp 2, 4-6. Defendant's name was misspelled in this opinion.

The hotly disputed issue in this case is the medical care of the children. From October 2016 to May 2017, the two children visited the pediatrician a total of 28 times. In between those visits, [father] repeatedly took the children to after-hours clinics seeking antibiotics when the children experienced symptoms like stuffy noses and sore throats. . . . [Mother] became concerned with [father's] aggressive approach to the children's medical care, which prompted her to seek sole legal custody. [Father] responded with his own motion seeking the same.

The parties disagreed over how to characterize the nature and frequency of these medical visits. [Mother] believed the visits were medical child abuse and lodged a complaint with [Children's Protective Services], which declined to investigate. [Mother] testified that during their marriage [father] wanted her to be sick all the time. Since their divorce, [father] would routinely take the children to after-hours clinics and not notify [mother] of the visits until it was too late for her to attend. [Father] refused to share information with her about the clinic visits, and [mother] found out information by cold calling various facilities around the area. [Mother] admitted that, except for the clinic visits, she consented to all of the children's medical treatments. . . . [Mother] further testified that [father] engaged in inappropriate behavior by spending too much time with the children at their school, and by taking pictures of AW through her classroom window. . . .

[Father] believed that each visit was made out of medical necessity. [Mother's] failure to continue the children's antibiotic regimen during her parenting time resulted in the children relapsing during [father's] parenting time. [Father] testified that he never supported sinus surgery for HW, and has always tried his best to communicate with [mother] regarding the children's medical treatment and requested mediation on these matters, which [mother] declined. [Father] never sought treatment for the children without [mother's] consent, and he always tried to see the children's pediatrician before taking the children to a clinic. [Father] used to walk his children into their school to comfort them during the divorce. However, he stopped that and only continued to walk them in so that he could use the restroom, help the children carry in their projects, or help install a server that he had donated to the school. . . .

The various doctors who testified generally agreed that [father] was aggressive in seeking treatment for his children, but that he acted appropriately and did not cross the line into medical abuse. The children's counselor testified that, although she was not capable of diagnosing [father] with Munchausen's syndrome by proxy, [father] did not display any of the traits associated with that disease. [Father's] therapist testified that he did not have Munchausen's syndrome by proxy. [Mother's] counselor testified that despite having never met the children or [father], she believed that [father] bullied [mother] and that "emotional violence" was present during the parties' marriage. [*Bauer v Waidelich*, unpublished per curiam opinion of the Court of Appeals, issued August 6, 2019 (Docket No. 345756), pp 1-2.]

-2-

In September 2018, following a lengthy evidentiary hearing, the trial court granted mother's motion for sole legal custody, and father appealed in this Court. *Id*. at 3. This Court affirmed, holding that the trial court did not err when it found that proper cause was established under the circumstances of the case. *Id*. at 3, 6. This Court rejected father's argument that the treatment of the children's medical conditions and illnesses was a routine matter that should be handled by the parent exercising parenting time. *Id*. This Court reasoned that while the case was a close call,

> the sheer number of visits over a short period of time is concerning, and [father's] insistence on seeking specialist treatments for the children for even the most routine of ailments certainly raises the issues beyond normal parenting. Most convincingly though, is that the parties' failure to cooperate resulted in the children having not had their annual physical, vision, or dental appointments at the time of the evidentiary hearing. Perhaps such appointments are routine, but the failure of the parties to work together to meet the children's basic medical needs cannot be classified as unimportant or insignificant. . . . Therefore, [father's] claim of routineness fails. [*Id*. at 6-7 (citation omitted).]

This Court held that the issue came down to credibility, and the trial court was in the best position to assess the credibility of the parties. *Id*. This Court affirmed the trial court's decision to award mother sole legal custody. *Id*. at 7-9.

The parties were able to coparent the children without court intervention for about five years after mother was granted sole legal custody, and they continued to share equal parenting time under a week-on, week-off schedule. But the relationship began to break down during the latter half of the 2022–2023 school year.

On May 26, 2023, mother moved the trial court to order father to show cause why he should not be held in contempt of court after HW experienced 17 school absences during father's parenting time, resulting in a warning from his high school that further absences might cause him to fail the tenth grade. In contrast, HW stayed home sick from school over the course of the school year for only 2½ days while in mother's care. Mother argued that the frequent absences during father's parenting time violated her sole legal custody because father did not inform her of most of the absences in advance, and she was not permitted to decide whether HW should stay home from school. Additionally, mother argued father obtained blood work for HW for food sensitivities without her consent, which was another violation of her sole legal custody. She also asserted that father administered breathing treatments to the children without her consent. Finally, mother contended that father interfered with her authority to make educational decisions for HW by meeting privately with HW and a school counselor and convincing HW to switch his class schedule.

Father reacted to mother's contempt efforts by moving to reinstate joint legal custody and modify the parties' parenting time. Father's position was that HW was experiencing serious gastrointestinal problems, similar to problems father faced when he was younger, and that mother was not taking the issue seriously. According to father, these problems were the source of HW's frequent absences. Father acknowledged setting up a meeting with HW and his school counselor regarding HW's desire to switch his school schedule but claimed he informed the counselor that

mother would have to make the final decision. Father argued that mother's indifference toward HW's medical condition established proper cause and a change in circumstances warranting joint legal custody and an expansion of father's parenting time with HW. In his response to the show-cause motion, father acknowledged purchasing an over-the-counter blood-testing kit from a Walgreens store, and that he pricked the children's fingers to test for allergies or food sensitivities. He noted that both children took the test and that it was simply "a matter of curiosity and fun." He denied administering any breathing treatments.

Mother responded that father's custody motion was in retaliation for her show-cause motion. Mother argued HW had a physical examination at the beginning of the school year and did not complain about any gastroenterological issues at that time. He likewise did not complain of significant stomach issues during mother's parenting time or when attending tennis practice three to four times per week. Regarding HW's minor stomach complaints, which mother attributed to dairy products, HW's doctor told mother to give HW probiotics and keep a food diary. Father refused to do either. To address father's concerns, mother scheduled an appointment for HW with a gastroenterologist, which was scheduled to occur in September 2023.

The trial court heard both mother's show-cause motion and father's custody motion during a June 22, 2023 hearing. During the hearing, mother (who is a registered nurse) proposed that on days when HW might be sick during father's parenting time, father could drop HW off at her house and allow mother to examine HW and make the final decision on whether he should stay home. Mother stated she would make herself available during father's parenting time and that, in the worst-case scenario, HW might miss only his first-period class. The parties acknowledged that AW was not the focus of their dispute and that she was doing well both medically and educationally.

The court modified the parenting-time schedule to adopt mother's suggestion that father take HW to mother's house when father suspected he was sick to allow her to make the final decision on whether he should stay home from school. After defense counsel questioned how father should approach the administration of medications, the court required father to administer medications to the children as recommended or required by their pediatrician, or as provided on a list prepared by mother, as necessary. The court ruled that father did not demonstrate proper cause or a change in circumstances warranting a change in legal custody or a modification of the parenting-time schedule. The court explained that there was no evidence mother ignored the children's medical conditions and noted that HW might be using father to get out of going to school. The court later denied father's motion for reconsideration of the changes to the parenting time, explaining father would have to use his "best judgment to make good faith efforts to comply with the Court's orders." In Docket No. 373564, father appeals as of right from the trial court's order denying his motion to change legal custody. See MCR 7.203(A)(1); 7.202(6)(a)(iii). In Docket No. 374353, he appeals from that same order by leave granted, raising issues that are outside the scope of his appeal of right, see MCR 7.203(A)(1)—specifically, challenging the requirements imposed on him by the trial court when he exercises parenting time.

After denying father's motion to change custody, the trial court conducted a three-day evidentiary hearing on mother's show-cause motion. Mother testified that she did not approve HW's excessive absences or the at-home blood testing. Father testified on his own behalf and called two additional witnesses to support his argument that HW was genuinely ill during his

-4-

parenting time. Father also testified that the blood test was an at-home kit he purchased from a Walgreens in early 2020 to give the children an activity while their school was closed temporarily in the early days of the COVID-19 pandemic. He denied that he was attempting to circumvent the sole-custody order or prove to mother that the children had food sensitivities.

The trial court ruled that the issues of HW's absences and his school schedule did not constitute contempt of court because mother ultimately acquiesced in father's behavior by failing to intervene earlier with HW's frequent absences and by agreeing to modify HW's school schedule. The court also dismissed the allegation relating to the breathing treatments, finding no evidence to support this allegation. However, the court held that father committed what the trial court described as criminal contempt of court for administering the at-home blood test. The court found father's intention was to determine whether there was something medically wrong with HW. The court further found that father was "deliberately trying to conceal these things because of the history of what's happening," and thus his conduct was willful. In Docket No. 369519, father claims an appeal from the court's order holding him in contempt.

As a sanction, the court ordered father to pay mother's attorney fees associated with the contempt proceedings. The court directed mother to move for attorney fees in compliance with the Michigan Supreme Court's opinion in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016). Mother then moved for $11,985 in attorney fees and costs. In response, father argued mother's fees should be limited because he admitted in his briefing to administering the blood test, rendering the entire evidentiary hearing unnecessary. Father did not dispute the requested $250 hourly rate but argued that most of the billing entries were excessive. Father requested that the court award mother $2,375 in attorney fees. During a brief hearing on the motion, in which the court did not hear any testimony, the court noted that although father admitted to giving HW the blood test, he also attempted to rationalize his conduct, which warranted the evidentiary hearing. The court rejected father's argument that it should not award mother attorney fees for issues that were ultimately found not to constitute contempt of court, explaining that it could take a more "holistic" approach to the matter:

> So, no dispute about the hourly rate. There's some dispute about the actual entries. That's really not going to make a big difference. The last thing I was going to say, I think that [mother] knew she was going to incur some attorney's fees as part of this, and that's just going to be part of this if people can't agree. I don't think she should bear the burden of all these attorney's fees, because I think a great deal of them were incurred, first of all, by [father's] actions, and then by his refusal to take ownership or responsibility for his actions, and insisting, I'm going to say, on an evidentiary hearing without admitting to things. In hindsight it's real easy to say, well yeah, you know, that's true. Well, yeah, you should say it before we get to the evidentiary hearing because that saves everybody attorney's fees.
>
> So, I do believe that the rate, the general amount of hours is appropriate. I'm not going to award 100 percent of the fees. But what I'm going to award to [mother] is I'm going to say she gets, $8,500.00 towards her attorney's fees. That is to be paid within 30-days of today's date.

In Docket No. 370605, father claims an appeal from the trial court's award of $8,500 as a sanction.

## II. CONTEMPT PROCEEDINGS

In Docket Nos. 369519 and 370605, father challenges the trial court's decisions to (1) hold him in contempt and (2) award mother $8,500 in attorney fees as a sanction. We conclude that we lack jurisdiction to review either issue. Even when no party challenges this Court's jurisdiction, it is always within the scope of our review, and we review the question de novo. *Nonhuman Rights Project, Inc v DeYoung Family Zoo, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369247); slip op at 2. Because we lack jurisdiction, we dismiss these appeals.

This Court recently addressed its jurisdiction in contempt matters. See *Alpena Co Bd of Co Rd Comm'rs v Tadajewski*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 374166). "To determine whether we have jurisdiction, . . . we must identify the type of contempt involved." *Id*. at ___; slip op at 2. In short, there are three forms of contempt: criminal contempt, coercive civil contempt, and compensatory civil contempt. *Id*. at ___; slip op at 2-3. This Court lacks jurisdiction on an appeal of right from civil contempt orders, whether coercive or compensatory. *Id*. at ___; slip op at 3. "[W]e review de novo whether contempt was civil or criminal, and '[i]t is irrelevant whether the trial court labels the contempt as civil or criminal.' " *Id*. at ___; slip op at 2, quoting *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 666; 997 NW2d 511 (2022).

Although the trial court characterized its decision as criminal contempt, our de novo review shows that it was compensatory civil contempt. The sanction imposed on father was not a criminal penalty authorized under MCL 600.1715. Instead, it was an indemnification award under MCL 600.1721, which "codifies the compensatory sanction" for compensatory civil contempt. *In re Contempt of Dougherty*, 429 Mich 81, 97; 413 NW2d 392 (1987). As a result, we lack jurisdiction over this appeal of right.

In reaching this conclusion, we note that the trial court was imposing general contempt sanctions, not attorney fees under MCR 3.206(D). Mother did not invoke MCR 3.206(D), and the trial court made no finding that mother was unable to pay, as that rule requires. See also MCL 552.13(1). Nor is this case controlled by *LAC v GLS*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365120). There, this Court imposed contempt sanctions under MCR 3.708(H)(5), which is specific to personal protection orders. Here, the sanction was an award of damages "measured in part by plaintiff's attorney fees" but "not an award of attorney fees as such" and therefore not a "final judgment" as that term is defined for civil cases in MCR 7.202(6)(a)(iv). *Alpena Co Bd of Co Rd Comm'rs*, ___ Mich App at ___; slip op at 3.[2]

---

[2] Father's own filings implicitly recognize this distinction. In his jurisdictional checklists filed under MCR 7.204(C)(6), he relies on MCR 7.202(6)(b)(ii)—which defines a final judgment in a *criminal* case as including the original sentence imposed following conviction—for Docket No. 369519, but on MCR 7.202(6)(a)(iv)—which defines a final judgment in a *civil* case as including a postjudgment order awarding or denying attorney fees under court rule or law—for Docket No. 370605. That position would require the supposed criminal proceeding to transform into a civil matter once the sanction issued. We conclude, consistent with *Alpena Co Bd of Co Rd Comm'rs*, that the proceeding was civil throughout and that an award under MCL 600.1721 is not

III.  LEGAL CUSTODY

In Docket No. 373564, father argues the trial court abused its discretion and violated MCR 3.210(C)(8) by denying his motion to reinstate joint legal custody without an evidentiary hearing, asserting that he established proper cause and changed circumstances by a preponderance of the evidence.  We disagree.

The trial court's custody decision must be affirmed unless the trial court made factual findings against the great weight of the evidence, committed a palpable abuse of discretion, or committed a clear legal error on a major issue.  MCL 722.28.  This Court should not substitute its judgment on factual questions unless the factual decision "clearly preponderate[s] in the opposite direction."  *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (cleaned up).  "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion."  *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023) (cleaned up).  An abuse of discretion in this context "retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic."  *Id*. (cleaned up).  A clear legal error occurs when the trial court chooses, interprets, or applies the law incorrectly.  *Id*.  "This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments."  *Id*. (cleaned up).

When a party seeks to modify an existing custody or parenting-time order, MCL 722.27(1)(c) provides that the movant must establish first that proper cause or a change in circumstances exists before the court may amend a previous judgment or order on child custody.  *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017).  The standard for determining whether proper cause or a change of circumstances exists is outlined in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003).  To establish "proper cause" to revisit a custody order, the moving party must establish, by a preponderance of the evidence, that an appropriate legal ground exists for the court to act.  *Lieberman*, 319 Mich App at 82, citing *Vodvarka*, 259 Mich App at 512.  " '[T]he appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being.' "  *Lieberman*, 319 Mich App at 82, quoting *Vodvarka*, 259 Mich App at 512.  For change of circumstances "the movant must prove by a preponderance of the evidence that 'since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed.' "  *Lieberman*, 319 Mich App at 81-82, quoting *Vodvarka*, 259 Mich App at 512-513.

Regarding whether an evidentiary hearing is necessary, MCR 3.210(C)(8) provides:

> In deciding whether an evidentiary hearing is necessary with regard to a postjudgment motion to change custody, the court must determine, by requiring an

---

an award of "attorney fees" under MCR 7.202(6)(a)(iv).  And while this Court has at times assumed that it can treat a claim of appeal from a non-final order as an application for leave and grant it to reach the issue presented, see, e.g., *In re Investigative Subpoena*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003), we do not choose to exercise any such discretion to do so.

offer of proof or otherwise, whether there are contested factual issues that must be resolved in order for the court to make an informed decision on the motion.

"Although the threshold consideration of whether there was proper cause or a change of circumstances might be fact-intensive, the court need not necessarily conduct an evidentiary hearing on the topic." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). Issues relating to medical care may give rise to proper cause or change in circumstances warranting a change in custody. *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011).

If the proposed modification in custody would change the child's established custodial environment, the movant must show, by *clear and convincing* evidence, that the change in custody would be in the child's best interests. *Lieberman*, 319 Mich App at 83-84. An established custodial environment exists

> if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to the permanency of the relationship shall also be considered. [*Id.* at 81 (cleaned up), quoting MCL 722.27(1)(c).]

If the proposed modification would not change the child's established custodial environment, then the movant must establish by a *preponderance* of the evidence that the change is in the best interests of the child. *Id.* at 84. In this case, the trial court never reached the issues of the established custodial environment or the children's best interests because it found father did not establish proper cause or a change in circumstances.

The focus of father's argument on appeal is whether the trial court abused its discretion by failing to recognize proper cause or a change in circumstances warranting a return to joint legal custody. He emphasizes our holding in *Dailey* that issues relating to medical care can support a finding that proper cause or a change of circumstances exists to justify revisiting custody. He argues proper cause existed under these statutory best-interest factors:

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> * * *

> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference. [MCL 722.23(c)-(e) and (i).]

In his view, the trial court overlooked that mother was ignoring HW's medical condition and alienating father from the children's educational decisions.

When denying father's custody motion, the trial court explained there was no evidence mother ignored the children's medical conditions. The court noted that although HW had significant absences from school during father's parenting time, HW was continuing his extracurricular activities. The court suggested that either father had poor dietary options at his home, or that HW might have been manipulating the situation to avoid attending school. The court was also concerned about father projecting his own health issues onto HW.

We agree that father failed to show by a preponderance of the evidence that the conditions surrounding custody of the children that have, or could have, a significant effect on the children's well-being had materially changed since the entry of the last custody order. Nor has father established by a preponderance of the evidence that an appropriate legal ground existed for the court to act on the basis of best interest factors (c), (d), (e), or (i). If anything, the facts continued to demonstrate a pattern by father of aggressively pursuing medical treatment for the children and imposing his medical beliefs on HW. Perhaps the most compelling evidence for father's position was his contention that HW had blood in his stool on one occasion during his parenting time. But the evidence attached to the motion and answer did not support that mother ignored HW's medical conditions simply because she did not do as father demanded and take HW to father's gastroenterologist of choice. Instead, mother discussed the issue with HW's pediatrician and booked an appointment with another gastroenterologist. As the court noted, there was no dispute during the June 22, 2023 hearing that HW missed 17 days of school while at father's house, but only 2½ days at mother's house. During the time he missed school, he attended extracurricular activities. Considering the history of the case and HW's older age, the court aptly noted that HW may be opportunistic when he was at father's house because father was more inclined to allow him to stay home.

Father also faults mother for not informing him of prior attendance letters, yet he fails to explain why mother was obligated to do so or how that would have affected HW's attendance, given father's position that HW was genuinely ill during the days he was kept home or picked up from school. Father then failed to inform mother on the majority of the occasions he kept HW home from school, which prevented mother from making the final decision. Moreover, text messages showed mother was willing to take HW to the gastroenterologist, just not the doctor that father wanted him to visit. Mother's choice was understandable considering the history of father's aggressive medical treatment. More importantly, her choice fell within her discretion as the sole legal custodian. There is no indication that mother was ignoring a serious medical condition on the part of HW.[3] Accordingly, there was no proper cause or change in circumstances as it related to mother's sole legal custody.

---

[3] It is also noteworthy that the court ordered that HW attend a previously scheduled gastroenterologist appointment in September 2023. Father does not suggest that any major gastroenterological issue was uncovered during that appointment.

Additionally, there was no evidence of any particular concerns relating to AW, other than a minor issue involving her use of the application Snapchat on her cell phone to send photographs to boys. The Snapchat issue was relatively minor and would not rise to the level of proper cause or change of circumstances on its own. As mother points out, any concerns relating to HW, including his alleged preference to stay with father, are moot because HW turned 18 while this appeal was pending. MCL 722.27(1)(c); *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009) ("Once a circuit court obtains jurisdiction over divorce proceedings, it retains that jurisdiction over custody and visitation matters until the child attains the age of 18."). Father suggests on appeal that the issue is not moot because "AW may have similar problems, not only now, but in the future." But there is no indication that AW was facing any medical problems, and she did not have any major attendance issues. And while father cites best interest factor (i) relating to the reasonable preferences of the child, there is no evidence that AW's preferences favored father on this issue. So the practical effect of a change in legal custody is that it would affect only AW, who was not the original focus of the custody motion.

Father also suggests mother alienated him from the children by preventing his involvement in the children's education. He asserts he was in an "awkward position" of explaining to the children that he cannot take HW to the doctor for treatment. But these issues were the consequence of the court's 2018 custody order, which was itself a reaction to father's excessive medical treatment for the children. Father cannot engage in decision-making on important questions of the children's medical care or education because he is not a joint legal custodian, not because of any conduct on mother's part. Mother, as the sole legal custodian, has the final decision as it relates to legal custody matters. Father has not demonstrated a change in circumstances or proper cause simply because he is unhappy with the limits of mother's sole legal custody. The trial court did not abuse its discretion by failing to find proper cause or a change in circumstances, and for this reason, the court did not need to make additional findings on the best interests of the children.

Furthermore, father was not entitled to an evidentiary hearing on the issue. For the reasons discussed, there was no factual dispute that HW missed a significant number of school days under father's care yet attended extracurricular events. There was no dispute that father did not inform mother about most of the absences. Again, there was no evidence mother was ignoring a serious medical condition. And there is no dispute that mother scheduled a gastroenterologist appointment for HW, which the court ordered must occur. Thus, the facts as asserted by father were not legally sufficient to demonstrate proper cause or change of circumstances. The trial court did not err or violate MCR 3.210(C)(8) by declining to conduct an evidentiary hearing.

## IV. PARENTING TIME

In Docket No. 374353, father argues the trial court abused its discretion and committed a clear legal error by preventing him from making what he characterizes as routine decisions during parenting time. Specifically, he objects to provisions requiring him to (1) bring the children to mother's home when he believes they may be ill to allow her to decide whether they should attend school, and (2) administer only medications approved by mother or the children's pediatrician. He also argues that the court failed to apply the correct framework for modifying parenting time. We disagree with both arguments.

As with custody orders, " '[o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue.' " *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (citation omitted). This Court must not substitute its judgment on questions of fact unless the facts of the case "clearly preponderate in the opposite direction." *Id*. at 21. An abuse of discretion exists for purposes of parenting-time disputes " 'when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias.' " *Id*. (citation omitted). A clear legal error occurs " 'when the trial court errs in its choice, interpretation, or application of the existing law.' " *Id*. (citation omitted).

## A. ROUTINE DECISIONS

Under MCL 722.26a, joint legal custodians "shall share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). By contrast, a parent exercising parenting time decides "all routine matters." MCL 722.27a(11); 722.26a(4). The statute does not define a "routine matter," but this Court has held that important decisions include medical and educational decisions. *Shulick v Richards*, 273 Mich App 320, 327; 729 NW2d 533 (2006).

The challenged order provides, in relevant part:

> IT IS FURTHER ORDERED that if either of [the] minor children are sick at [father's] home and it is a school day, then [father] shall inform the [mother] and transport the sick child to [mother's] home within a reasonable time before school start time. [Mother] shall determine and decide if the children are sick and need to stay home, and/or if the children need medical intervention.

> IT IS FURTHER ORDERED that [father] shall administer prescription or non-prescription medication to the minor children as recommended/required by their Primary Care Doctor, Dr. Barnes. Further [mother] will provide the recommended/required medication list to [father] as necessary.

Contrary to father's argument on appeal, the order does not prohibit him "from administering any forms of medication." Instead, it requires that any medication be consistent with the pediatrician's recommendations or with a list provided by mother. Outside these parameters, the parties retain flexibility to decide how to arrange for medication distribution during father's parenting time. The order only requires that mother provide a list "as necessary," contemplating that the list may not always be required. The order was designed to give father clarity about what medications he may distribute to the children. The order does not prevent him from obtaining mother's permission when in doubt.

In fact, during the June 22, 2023 hearing, father's counsel stated that father would need guidance on what he could and could not do during his parenting time:

> Well, your Honor, I guess if you look at what we're being accused of, is my client allowed to, and I don't want to be ridiculous and say buy a Band-Aid. Is he

-11-

allowed to get salt, salt water gargle?  Can he go, what can he do?  Is he allowed to do anything?

The court suggested that father obtain mother's permission for any treatment that was not done historically.  The court then indicated that mother could put together a list of permitted over-the-counter medications.  The court also cautioned father that just because something was available over the counter did not mean it was appropriate to administer to the children—clearly responding to his decision to perform the over-the-counter blood test on the children.  The court's decision to have mother provide father a list of medications was a direct response to father's confusion and does not interfere with his ability to make routine decisions during parenting time.

As for the provision requiring that father drive a suspected sick child to mother's home so she can decide whether the child should stay home from school, this too involved an important educational and medical decision rather than a routine one.  While in other families the decision to keep a child home from school might be considered a routine matter, in this family the issue was an important one considering the history of the parties and the fact that HW was nearing the point of having to repeat the tenth grade.  Another factor was whether HW was taking advantage of father to stay home from school.  Having mother make the final call on whether the children stayed home from school addressed the concern that HW was feigning illness while in father's care.  Under these circumstances, the provisions of the court's order did not affect father's authority over routine matters under MCL 722.26a(4) or MCL 722.27a(11).

### B.  CHANGE IN PARENTING-TIME

The minor adjustments to parenting time did not amount to a change in the established custodial environment that would require a finding of proper cause or change in circumstances under the *Vodvarka* framework or an express finding on each statutory best-interest factor.  Moreover, proper cause and a change in circumstances existed under the more expansive framework that allows the trial court to make slight modifications to the parenting-time arrangements.

Substantial modifications of parenting time are considered significant enough that they affect the established custodial environment. *Lieberman*, 319 Mich App at 89.  However, "minor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment." *Id*. at 89-90.  In *Shade*, 291 Mich App at 26-27, this Court held that the *Vodvarka* framework for determining the existence of proper cause or a change of circumstances for custody decisions only applies to decisions on parenting time when the change would modify the established custodial environment.  When the change is "not so significant" that it results in the modification of the child's custodial environment, "a more expansive definition" is used for proper cause or change of circumstances. *Id*. at 27-28.  And normal life changes may be enough to modify parenting time even though they would not be considered sufficient to modify custody. *Lieberman*, 319 Mich App at 83.  When the proposed change would not affect the established custodial environment, the movant need only prove by a preponderance of the evidence that the change in parenting time is in the child's best interests. *Id*. at 84.  Additionally, a modification of parenting time does not require findings on each best-interest or parenting-time factor but rather requires findings only on contested issues. *Shade*, 291 Mich App at 31-32.

This approach is "more flexible" and encompasses "the very normal life change factors" that would be insufficient to justify a change in custody. *Marik v Marik*, 325 Mich App 353, 367-368; 925 NW2d 885 (2018) (cleaned up). When the modification in parenting time would not change the established custodial environment, the trial court's failure to explicitly state a proper cause or change in circumstances does not constitute a clear legal error when the court's reasoning is otherwise clear from the record. See *Rains v Rains*, 301 Mich App 313, 341-342; 836 NW2d 709 (2013).

The issue in *Shade* involved a change in a parenting-time schedule to accommodate the child's extracurricular activities. *Shade*, 291 Mich App at 20. This Court concluded that the circumstances of the case would not amount to a change of custody. *Id*. at 29. The minor child was a high school student whose schedule was shifting, and the existing parenting-time arrangement prevented her from participating in extracurricular activities. *Id*. The normal life changes she experienced were sufficient to justify modifying parenting time, though this Court did not expressly define proper cause or changed circumstances in that context. *Id*. at 31. This Court also explained that the trial court was not required to explicitly address each best-interest factor or the parenting time factors in MCL 722.27a(6), because its statements on the record made clear that it had considered the child's best interests. *Id*. at 32. This Court affirmed the trial court's ruling, explaining:

> The trial court's modification of defendant's parenting time, which was minimal and did not significantly alter the number of defendant's parenting time days, was in the minor child's best interests because it allowed the child to participate in social activities and extracurricular activities in which she desired to participate in high school. [*Id*.]

As in *Shade*, the provisions at issue had only a minimal effect on father's parenting time. The order did not change the total number of parenting-time days or alter the schedule. Although the trial court did not expressly use the terms "proper cause" or "change in circumstances," its reasoning is apparent from its order. See *Rains*, 301 Mich App at 341-342. The court's goal was to clarify how father should address certain situations during his parenting time that implicated mother's sole legal custody. Its primary concern was the children's health—particularly HW—as reflected in its remark, "I don't want to play games with the child's health."

These modest adjustments did not alter whom the children looked to for guidance, discipline, the necessities of life, or parental comfort, especially given their ages and the fact that mother had exercised sole legal custody for five years. See *Lieberman*, 319 Mich App at 81. The court therefore could apply the more expansive definition of proper cause, which was satisfied by the evident confusion between the parties about medications and school absences. And although the court did not conduct an explicit best-interest analysis, it was not required to do so; its statements on the record make clear that it was focused on the children's best interests. We discern no abuse of discretion, and none of the court's pertinent factual findings were against the great weight of the evidence. For these reasons, the trial court did not err in making these modest adjustments to the parties' parenting time.

-13-

In Docket Nos. 369519 and 370605, we dismiss the appeals for lack of jurisdiction over the civil contempt sanction.  In Docket Nos. 373564 and 374353, we affirm.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica